STATE OF NORTH CAROLINA v. MONICA D. BRANCH, Defendant

No. COA03-350

(Filed 17 February 2004)

**Search and Seizure— motion to suppress drugs—license and registration checkpoint—dog sniff**

The trial court erred in a misdemeanor possession of marijuana and felony possession of cocaine case by denying defendant's motion to suppress evidence of the drugs found in a search at a license and registration checkpoint, because: (1) an officer's

STATE v. BRANCH

[162 N.C. App. 707 (2004)]

prior knowledge and present observations were not sufficient to justify a dog sniff and search of defendant's car, but were merely enough to justify the license check; (2) once the officers stopped defendant and she had given them her valid license and registration, some further particularized suspicion was necessary to justify a longer detention; (3) a reasonable and articulable suspicion is required before a dog sniff is valid even though it is not a search; and (4) the time needed to verify defendant's credentials is not a time during which officers may investigate any possible criminal activity while the defendant is immobilized.

Appeal by defendant from order denying her motion to suppress entered 29 August 2002 by Judge Anthony M. Brannon in Rockingham County Superior Court. Heard in the Court of Appeals 3 December 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General J. Allen Jernigan for the State.*

*Assistant Appellate Defender, Barbara S. Blackman for the defendant-appellant.*

ELMORE, Judge.

Monica D. Branch (defendant) was stopped at a "license and registration" checkpoint by Deputy Marshall of the Rockingham County Community-Oriented Policing Unit. Defendant produced a duplicate driver's license and a registration. Deputy Marshall was suspicious of the duplicate license, and suspected that she had outstanding warrants based on his prior knowledge of the defendant and that her license may have been revoked. Deputy Marshall pulled defendant out of the checkpoint and called in a license and warrant check. Deputy Marshall called over Deputy Howell to make inquiry of defendant while the checks were being performed. Deputy Howell, a K-9 officer, walked his dog around the perimeter of defendant's car while the checks were being performed. The dog alerted to the presence of narcotics. Deputies Marshall and Howell ordered defendant and her passenger out of the car and searched the car. Deputy Howell found marijuana stems and butts in the ashtray. He seized a purse lying on the front seat, which defendant denied was hers. Defendant later acknowledged ownership of the purse when Deputy Howell found marijuana in a non-transparent plastic container in the purse. Deputy Howell asked a female officer to search

defendant, as he believed, based on prior contact with her, that defendant carried cocaine in her brassiere. The officer found a packet of cocaine in defendant's brassiere. At no time did defendant consent to the searches.

Defendant was charged with misdemeanor possession of marijuana and felony possession of cocaine. Defendant moved to suppress the evidence of the drugs found in the search. The motion was denied by the trial court. Defendant preserved her right of appeal before she pled guilty to the charges. She now brings this appeal.

We note that the trial court's ruling on a motion to suppress is afforded great deference upon appellate review, as the trial court has the duty to hear testimony and weigh the evidence. *State v. Johnston,* 115 N.C. App. 711, 713, 446 S.E.2d 135, 137 (1994). But while the trial court's findings of fact may be binding on appeal, we review its conclusions of law *de novo. State v. Mahaley,* 332 N.C. 583, 423 S.E.2d 58 (1992). We must not disturb the court's conclusions if they are supported by the court's factual findings. *State v. Cooke,* 306 N.C. 132, 291 S.E.2d 618 (1982).

Defendant assigns error to the denial of the motion to suppress, arguing first that her seizure at an unconstitutional checkpoint and illegal detention following her presentation of a valid driver's license deprived her of her freedom from unreasonable searches and seizures under the United States and North Carolina Constitutions. We agree.

The trial court made the following findings of fact relevant to the issue before us:

5. That all vehicles entering the intersection, from both directions, on each road, were stopped and all drivers were required [to] produce a valid driver's license and registration.

. . . .

8. That Deputy Marshall testified a K-9 unit is normally available at the checkpoint to assist in the investigation and detect controlled substances if necessary.

. . . .

10. That the process of checking the drivers license and registration of each vehicle usually took about 40 seconds.

11. That at some point, at approximately 11:00 p.m., the Defendant, Monica Branch, came through the checkpoint and

was asked to produce her driver's license and registration. That she produced a duplicate driver's license. She also produced a registration or other information which indicated the registered owner of the vehicle was the Defendant's sister.

. . . .

14. That based upon Deputy Marshall's experience with Ms. Branch, and the fact that she presented a duplicate license, Deputy Marshall suspected that she did not have a valid permit and he decided to check and verify that her driver's license was valid.

15. That in Deputy Marshall's experience, persons who have lost their driving privileges frequently display duplicate permits.

16. That Deputy Marshall was acquainted with Mr. [sic] Branch and had reason to believe that her privilege to drive a motor vehicle was suspended.

17. That Deputy Marshall was acquainted with Mr. [sic] Branch and had reason to believe that there were outstanding warrants for her arrest.

18. That Deputy Marshall directed Ms. Branch to pull her vehicle off the roadway while he contacted the Rockingham County Sheriff's Department communications center to verify her driver's license status and to check for any outstanding warrants.

19. That Deputy Marshall spoke to Ms. Branch for approximately 40 seconds prior to directing her to pull over to the shoulder.

20. That during the time Deputy Marshall was contacting the Rockingham County Sheriff's Department communication and performing these checks, Deputy Howell approached her vehicle with his K-9 dog.

21. That Deputy Marshall and Deputy Howell had spoken briefly after Deputy Marshall made the decision to contact communications.

22. That Deputy Marshall had related to Deputy Howell that he had known Ms. Branch to be in possession of controlled substances in the past. Specifically, that he knew that she had, in the past, carried controlled substance on her person. That Deputy

Howell was also acquainted with Ms. Branch and was aware of her criminal history.

. . . .

26. Deputy Howell testified that at the time Ms. [Branch] [sic] passed through the checkpoint, he believed that Ms. Branch did not have a valid operating permit and that he communicated this information to Deputy Marshall. This belief was based upon the fact that he had previously charged Ms. Branch with a moving violation and that to his knowledge, she had failed to appear [in court] in January of 2000. Normally, this would result in the operating privilege being suspended or revoked.

27. That independent of any request from Deputy Marshall, and based upon his prior dealing with Ms. Branch, Deputy Howell decided to approach Ms. Branch's vehicle with his K-9, "Toon". That at the time that Deputy Howell approached the vehicle it was parked on a public roadway.

. . . .

31. That during the time that Deputy Howell was conducting his investigation, Deputy Marshall was in his vehicle checking the status of Ms. Branch's driver's license and checking for possible outstanding process for Ms. Branch.

32. That the Defendant was required to remain in her vehicle for less than 5 minutes while the officers continued their investigation.

33. After the dog alerted Deputy Howell returned the dog to his patrol car and informed Ms. Branch and her passenger that the dog had detected the odor of a controlled substance in the vehicle. Based upon that information, Deputy Howell advised the Defendant that he intended to search the vehicle.

Deputy Howell went on to find 0.6 grams of marijuana in the vehicle, more marijuana in a purse within the vehicle, and a 0.3 gram rock of crack cocaine in the defendant's brassiere.

The trial court concluded as a matter of law:

6. That the detention of all vehicles, including the Defendant's vehicle was reasonable in scope and duration.

7. That Deputies Marshall and Howell had specific articulable reasons to continue the investigation of the Defendant after the initial stop. Specifically, the continued detention of the Defendant was necessary to determine if she has a valid driver's license, and to determine if there were outstanding warrants for the Defendant.

8. That the duration of her detention to continue the investigation was reasonable and not excessive.

9. That Deputy Howell's conduct in taking his K-9 around the Defendant's vehicle did not constitute a search of an area to which the Defendant had a reasonable expectation of privacy. *State v. Fisher*, 141 N.C. App. 448 . . . 539 S.E.2d 677. Citing *Place*, 462 U.S. at 707, 77 L. Ed. 2d at 121.

10. For the purpose of the sniff, the Deputies did not need to justify the Defendant's detention with reasonable suspicion, based on objective, specific, and articulable facts because the detention did not exceed that which was already necessary to determine if the Defendant had a valid driver's license and to determine if there were outstanding warrants for the Defendant. *State v. McClendon*, 130 N.C. App. 368, 502 S.E.2d 902 (1998), aff'd, 350 N.C. 630, 517 S.E.2d 128 (1999), and *State v. Falana*, 129 N.C. App. 813, [817,] 501 S.E.2d 358[,] [360] (1998)[.]

This Court has upheld the constitutionality of a checkpoint which stops for a specified purpose every vehicle that passes, so long as the checks are not random and subject to the officer's unbridled discretion. *State v. Grooms*, 126 N.C. App. 88, 483 S.E.2d 445 (1997); *State v. Sanders*, 112 N.C. App. 477, 435 S.E.2d 842 (1993). The checkpoint in question was a checkpoint designated to check licenses and registrations, and if further evidence was detected of impaired driving or illegal activity, further investigation was conducted according to the instructions given the officers. This is within the constitutional mandates.

The trial court found as fact that the officers had previous knowledge of the defendant and also observed that she had given a duplicate license. According to the case of *State v. Briggs*, 140 N.C. App. 484, 536 S.E.2d 858 (2000), it is proper for an officer's prior knowledge of a defendant, combined with present observations and not taken alone, to constitute a reasonable suspicion justifying fur-

ther investigation. In *Briggs*, the officer had previously arrested the defendant for possession of controlled substances and knew defendant was on probation at the time of the stop. The officer smelled burned cigar in defendant's vehicle and on defendant, and was aware that burning cigars were commonly used to mask the smell of illegal substances. Defendant had previously stated he did not smoke cigars. His eyes were red and glassy, and his behavior suggested possible usage of a controlled substance. *Briggs*, 140 N.C. App. at 493-94, 536 S.E.2d at 863-64. These observations added to the officer's prior knowledge of the defendant to justify a patdown search and the confiscation of the fruit of that search, which was a cigar holder containing crack cocaine.

In the case at bar, the prior knowledge and present observations of the officers were not sufficient to justify a dog sniff and search of defendant's car, but were enough to justify the license check. Both deputies suspected that Defendant was carrying a duplicate license because in their memory she had been charged with an offense which would result in the revocation of her license. They had observed in their experience that sometimes when an individual's license had been revoked, the individual may drive with an invalid duplicate which was made prior to the revocation. Prior knowledge of the defendant alone would not constitute such a reasonable suspicion. Neither would the presentation of a duplicate license, standing alone. Both together, however, may form reasonable suspicion to justify investigation of the validity of the license. Such was the case here, and the suspicion related to her driving privileges alone. At that point there were no further observations indicating other illegal conduct by the defendant.

Once the officers had stopped defendant, and she had given them her valid license and registration, some further particularized suspicion was necessary to justify a longer detention. In addition, a reasonable and articulable suspicion is required before a dog sniff, even though it is not a search, is valid. *State v. Falana*, 129 N.C. App. 813, 817, 501 S.E.2d 358, 360 (1998).

Likewise, since the canine sniff would not be appropriate beyond the detention because the defendant presented what proved to be a valid license and registration, the canine sniff during the time license and registration checks were conducted is also inappropriate. The time needed to verify defendant's credentials is not a time during which officers may investigate any possible criminal activity while

the defendant is immobilized. This would present officers with a free-for-all race against the clock for evidence, guided only by their unbridled discretion, which is unconstitutional.

The U.S. Supreme Court has ruled that:

> [A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. . . . It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.

*Florida v. Royer*, 460 U.S. 491, 501, 75 L. Ed. 2d 229, 238 (1983) (citations omitted).

That same reasoning has been applied in cases such as *State v. McClendon*, 130 N.C. App. 368, 502 S.E.2d 902 (1998) by this Court. Allowing the dog sniff of defendant while she was detained on suspicion of carrying an invalid license would not be consistent with this reasoning.

We therefore determine that the initial stop was justified, as found by the trial court. The trial court erred, however, in finding that no reasonable suspicion was necessary to conduct the dog sniff and subsequent searches. Because this conclusion is contrary to our caselaw, we must reverse the ruling of the trial court. We do not reach the second issue raised by the defendant concerning the location of the signing of the order because the first issue is dispositive. The order denying the motion to suppress is therefore

Reversed.

Judges BRYANT and CALABRIA concur.