STATE OF NORTH CAROLINA v. MONICA D. BRANCH

No. COA03-350-2

(Filed 4 April 2006)

**1. Search and Seizure— lawful detention—use of drug-sniffing dog around exterior of vehicle**

Once the lawfulness of a person's detention is established, including to verify driving privileges at a license checkpoint or a stop for a traffic violation, officers need no additional assessment under the Fourth Amendment before walking a drug-sniffing dog around the exterior of that individual's vehicle.

**2. Criminal Law; Search and Seizure— motion to suppress—drugs—null and void order entered out of county, out of term, and out of session**

The trial court erred in a drug case by denying defendant's motion to suppress, and the case is remanded for a new suppression hearing, because the order denying her motion to suppress was null and void since it was entered out of county, out of term, and out of session. Defendant's agreement to the trial court's request to take the motion under advisement is not the same as consenting to the order being entered out of term, and defendant's failure to object does not affect the nullity of an order entered out of term and out of session.

Appeal by defendant from order entered 29 August 2002 by Judge Anthony M. Brannon in Rockingham County Superior Court. Originally heard in the Court of Appeals 3 December 2003. Now on remand from the United States Supreme Court by order issued 11 October 2005, vacating this Court's 17 February 2004 opinion.

*Attorney General Roy Cooper, by Special Deputy Attorney General J. Allen Jernigan, for the State.*

*Barbara S. Blackman for defendant-appellant.*

ELMORE, Judge.

On 11 October 2005 the United States Supreme Court vacated this Court's 17 February 2004 opinion in *State v. Branch*, 162 N.C. App. 707, 591 S.E.2d 923 (2004), and remanded the matter to this Court for further consideration in light of the decision in *Illinois v. Caballes*, 543 U.S. 405, 160 L. Ed. 2d 842 (2005). *See North Carolina v. Branch*, 126 S. Ct. 411, 163 L. Ed. 2d 314 (2005). At the direction of the Supreme Court, we now undertake that review.

The facts of this case have been laid out in our prior opinion, but we will restate those applicable to this review. On 4 November 2000 officers of the Rockingham County Sheriff's Department conducted a drivers license checkpoint near the intersection of Bethlehem Church Road and Harrington Highway. The officers were stopping all cars approaching the intersection and quickly assessing whether the driver's registration and license were valid. During the time the officers were performing this duty, officers with the K-9 unit were available for assistance. Determining the validity of the driver's information presented typically took approximately forty seconds.

At approximately 11:00 p.m. defendant approached the checkpoint and was stopped by Deputy Marshall. Deputy Marshall recognized defendant as someone he had previously arrested for drug possession and whose drivers license might be revoked. Defendant presented a duplicate license and a car registration bearing her sister's name. Deputy Marshall testified at the motion to suppress that duplicate licenses can often be used by drivers whose originally issued license was taken by the Department of Motor Vehicles during a period of suspension or revocation.

Deputy Howell with the K-9 unit testified at the hearing on the motion that seeing defendant driving through the checkpoint stood out in his mind as well. He recalled that upon previously issuing defendant a citation for a moving violation she had failed to appear in court, an act that would normally result in a suspension or revocation of her driving privileges.

After conferring with one another, Deputy Marshall directed defendant to the side of the road and he attempted to verify over the

radio whether defendant had any outstanding warrants or was otherwise legally able to drive. While he was verifying this information, Deputy Howell took his dog "Toon," a well-trained K-9 officer, around the exterior of defendant's car. Toon alerted Deputy Howell to the presence of contraband by scratching on the passenger's side door. Deputy Howell and Toon's walk around the car occurred during Deputy Marshall's investigation, and the alert came before Deputy Marshall was finished verifying defendant's status. The entire incident resulted in an overall stop of less than five minutes.

Based on Toon's alert to contraband, Deputy Howell asked defendant and her passenger to step out of the car while he searched it. He found small amounts of marijuana in the ash tray. He further inquired about the contents of a purse that was taken out of the car by defendant. She denied ownership of it, but upon Deputy Howell's search confessed that the purse was hers. The purse contained more marijuana. Defendant was placed under arrest.

Just after the search of the car, Deputy Marshall notified Deputy Howell there were no warrants for defendant's arrest and her drivers license was valid. Since defendant was under arrest at this point, a female officer was asked to conduct a personal search of defendant. This search revealed a small amount of cocaine in defendant's bra.

After defendant's motion to suppress was denied by the trial court, she pled guilty, but pursuant to N.C. Gen. Stat. § 15A-979(b) sought review of that denial before this Court. Defendant failed to except to any of the trial court's findings and thus, we reviewed the trial court's conclusions of law. *See Branch*, 162 N.C. App. at 709, 591 S.E.2d at 924; *see also* N.C.R. App. P. 10(c)(1).

Based on that limited review, we held that the license checkpoint was proper and defendant's detention beyond the initial review of her license and registration was for the valid and checkpoint related purpose of verifying the status of her driving privileges. *Id.* at 712-13, 591 S.E.2d at 926. We stressed, however, that the detention was not just based on presentation of a duplicate license, or the sole fact that the officers' recollection was defendant might have failed to appear in court; it was the interaction of these two facts that supported detaining defendant for further investigation. *Id.* ("Prior knowledge of the defendant alone would not constitute such a reasonable suspicion. Neither would the presentation of a duplicate license, standing alone. Both together, however, may form reasonable suspicion to justify investigation of the validity of the license."). We next held

that the facts did not support the conclusion that a reasonable articulable suspicion existed to use the K-9 unit to search the exterior of the car, and failure to meet that standard required suppression. *Id.* at 714, 591 S.E.2d at 927 ("We therefore determine that the initial stop was justified, as found by the trial court. The trial court erred, however, in finding that no reasonable suspicion was necessary to conduct the dog sniff and subsequent searches. Because this conclusion is contrary to our caselaw, we must reverse the ruling of the trial court."). As such, we reversed the trial court's denial of the motion to suppress.

[1] Following the issuance of our opinion, the State first sought discretionary review before our Supreme Court. That review was initially granted, *see State v. Branch*, 358 N.C. 236, 595 S.E.2d 438 (2004), but then deemed improvidently allowed, *see State v. Branch*, 359 N.C. 406, 610 S.E.2d 198 (2005). The State next sought review before the United States Supreme Court, which granted certiorari for the limited purpose of vacating the opinion and remanding the case to this Court for further consideration in light of *Illinois v. Caballes*, 543 U.S. 405, 160 L. Ed. 2d 842 (2005), a case that was decided while *Branch* was pending review before the North Carolina Supreme Court. *See North Carolina v. Branch*, 126 S. Ct. 411, 163 L. Ed. 2d 314 (2005).

In *Caballes*, the Supreme Court held that the Fourth Amendment does not give rise to a legitimate expectation of privacy in possessing contraband or illegal drugs, and as such, a well-trained dog that alerts solely to the presence of contraband during a walk around a car at a routine traffic stop "does not rise to the level of a constitutionally cognizable infringement." *Id.* at 409, 160 L. Ed. 2d at 847. There, the defendant had been stopped for speeding by an Illinois State Trooper. While the trooper was issuing a citation, another trooper arrived on scene and, without prolonging the traffic stop,[1] walked his well-trained K-9 officer around the car. The dog alerted to the presence of contraband in the trunk. *Id.* at 406, 160 L. Ed. 2d at 845-46.

---

1. In *Caballes*, the Supreme Court prefaced its analysis of whether the dog sniff infringed on defendant's Fourth Amendment rights by plainly stating, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.* at 407, 160 L. Ed. 2d at 846. The Court did not address that issue, concluding that the Illinois Supreme Court had already determined the traffic stop was not prolonged. *Id.* at 407-08, 160 L. Ed. 2d at 846. We also need not address that concern today since the trial court conclusively found that the dog sniff was completed within the time necessary to investigate defendant's driving privileges.

The defendant argued unsuccessfully to the trial court that the drugs should have been suppressed. The Illinois Supreme Court concluded, however, that "because the canine sniff was performed without any 'specific and articulable facts' to suggest drug activity, the use of the dog 'unjustifiably enlarg[ed] the scope of a routine traffic stop into a drug investigation.' " *Id.* at 407, 160 L. Ed. 2d 846 (quoting *People v. Caballes*, 802 N.E.2d 202, 205 (Ill. 2003)). The United States Supreme Court granted certiorari to determine "[w]hether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop." *Id.* The Court answered the question in the negative.

> [T]he use of a well-trained narcotics-detection dog—one that "does not expose noncontraband items that otherwise would remain hidden from public view," *Place*, 462 U.S., at 707, 77 L. Ed. 2d 110, 103 S. Ct. 2637—during a lawful traffic stop, generally does not implicate legitimate privacy interests. In this case, the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation. Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement.

*Id.* at 409, 160 L. Ed. 2d at 847.

Although *Branch* arises from a different set of factual circumstances than *Caballes*—one involves a detention at a license checkpoint and the other a stop for a traffic violation—the Supreme Court's analysis is no less applicable. In *Branch*, we determined that the officers' detention of defendant to verify whether her driving privileges were valid was reasonable under the circumstances. *See Branch*, 162 N.C. App. at 712-13, 591 S.E.2d at 926. And once the lawfulness of a person's detention is established, *Caballes* instructs us that officers need no additional assessment under the Fourth Amendment before walking a drug-sniffing dog around the exterior of that individual's vehicle. This is directly contrary to what we held in *Branch*. Thus, based on *Caballes*, once Ms. Branch was detained to verify her driving privileges, Deputies Howell and Marshall needed no heightened suspicion of criminal activity before walking Toon around her car. Yet, this does not end our inquiry; upon remand we must address the second issue related to the suppression order that we did not need to address previously.

[2] Defendant asserts that she is entitled to a new suppression hearing because the order denying her motion to suppress was null and

void since it was entered out of county, out of term, and out of session. We agree.

On 8 August 2001 defendant filed her motion to suppress in Rockingham County Superior Court and that motion was heard before Judge Anthony M. Brannon, serving as an emergency recalled judge, on 5 October 2001. No ruling was issued at that time; instead, with the counsel's consent, the trial judge said he would take the matter under advisement and issue a ruling and order shortly. Yet, it was not until 29 August 2002 that the trial court's order was entered, nearly a year after the hearing on the motion. The order signed in Durham County was quite thorough, containing forty-seven findings of fact and sixteen conclusions of law.

Our Supreme Court has held that:

'an order of the superior court, in a criminal case, must be entered during the term, during the session, in the county and in the judicial district where the hearing was held.' *State v. Boone*, 310 N.C. 284, 287, 311 S.E.2d 552, 555 (1984). Absent consent of the parties, an order entered in violation of these requirements is null and void and without legal effect. *Id.*

*State v. Trent*, 359 N.C. 583, 585, 614 S.E.2d 498, 499 (2005). The State does not dispute this rule, nor the fact that this order was entered out of term, but argues that defendant consented to entering the order out of term. Defendant did consent to the trial court's request to take the motion under advisement and issue a later order, but did not explicitly consent to the order's entry out of term.

When presented with a strikingly similar scenario in *Trent*, our Supreme Court rejected the notion that an agreement to have the court take an issue under advisement was the same as consenting to the order being entered out of term. *See id.* at 586, 614 S.E.2d at 500. In fact, the Court stated "the decisions of our appellate courts adequately demonstrate that defendant's failure to object does not affect the nullity of an order entered out of term and out of session." *Id.* (citing *State v. Saults*, 299 N.C. 319, 261 S.E.2d 839 (1980); *Bynum v. Powe*, 97 N.C. 374, 2 S.E. 170 (1887); *State v. Reid*, 76 N.C. App. 668, 334 S.E.2d 235 (1985)). Further, even though the prejudice to defendant in this circumstance is marginal—she pled guilty to the charges on 15 October 2005—since the order is null and void, any prejudicial analysis is misplaced. *See id.* 587, 614 S.E.2d 500 (quoting *State v. Boone*, 310 N.C. 284, 289, 311 S.E.2d 552, 556 (1984)).

IN RE K.H. & P.D.D.

[177 N.C. App. 110 (2006)]

Accordingly, we vacate the trial court's order denying defendant's motion to suppress and remand the matter for a new suppression hearing. Any hearing that occurs pursuant to this opinion will not be bound by our previous opinion in this case nor the prior suppression order, and should necessarily address whether the officers' investigative detention of defendant at a license checkpoint while verifying her driving privileges was constitutional.

Vacated and Remanded.

Judges BRYANT and CALABRIA concur.