STATE OF NORTH CAROLINA v. OZELL BLANGO BRIMMER, DEFENDANT

No. COA06-1701

(Filed 4 December 2007)

**Search and Seizure— motion to suppress evidence—vehicle stop—canine sniff of vehicle**

The trial court did not err in a possession with intent to sell or deliver marijuana and maintaining a vehicle for selling controlled substances case by denying defendant's motion to suppress evidence obtained as a result of a vehicle stop even though defendant contends the State lacked reasonable suspicion to conduct a dog sniff, because: (1) a dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment; (2) if the detention is prolonged for only a very short period of time, the intrusion is considered de minimis and as a result, even if the traffic stop has been effectively completed, the sniff is not considered to have prolonged the detention beyond the time reasonably necessary for the stop; (3) in this case the canine unit arrived prior to an officer giving defendant the warning ticket, the officer then explained that another officer was going to conduct a dog sniff of the exterior of defendant's car, it took the dog a minute and a half to complete the sniff, and the stop was extended only for the time necessary to explain about the dog sniff and the one-and-a-half minutes of the actual sniff; and (4) defendant chose on his own initiative to exit his car and talk with the police officer after the canine unit had already arrived, and defendant's own actions in leaving the car necessarily prolonged the stop for the modest period of time necessary to be frisked, to talk with the officer, and to return to his car.

Appeal by defendant from judgment entered 26 September 2006 by Judge Kenneth F. Crow in Craven County Superior Court. Heard in the Court of Appeals 29 August 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*McAfee Law, P.A., by Robert J. McAfee, for defendant-appellant.*

GEER, Judge.

Defendant pled guilty to one count of possession with intent to sell or deliver marijuana and one count of maintaining a vehicle for selling controlled substances, but reserved the right to appeal the trial court's denial of his motion to suppress evidence obtained as a result of a vehicle stop. Although defendant does not contest the validity of the initial stop, he contends that a subsequent drug dog sniff constituted an unlawful detention without reasonable suspicion. Based on *Illinois v. Caballes*, 543 U.S. 405, 160 L. Ed. 2d 842, 125 S. Ct. 834 (2005), and *State v. Branch*, 177 N.C. App. 104, 627 S.E.2d 506, *disc. review denied*, 360 N.C. 537, 634 S.E.2d 220 (2006), we hold that the trial court properly denied the motion to suppress.

## Facts

On 24 January 2006, Officer Todd Conway was traveling behind defendant's vehicle. As he routinely does while on duty, Officer Conway ran defendant's license tag to check for valid registration and insurance. Before Officer Conway received a response from the Division of Motor Vehicles ("DMV"), defendant made a left turn onto another street. Officer Conway kept driving straight, but five to six seconds later, he learned that defendant's tags were registered to a Cadillac rather than the Lexus that defendant was driving. At that point, Officer Conway turned around, located defendant, and stopped him.

Officer Conway told defendant that he was being stopped on suspicion of having fictitious tags. Defendant explained that his mother had just purchased the car and gave Officer Conway the transfer of title tags and his driver's license. The officer told defendant that he was going to issue a written warning.

As Officer Conway walked back to his car with defendant's paperwork, he recognized the name on defendant's driver's license as a name he had heard mentioned over the radio by narcotics officers.

Officer Conway called the on-duty narcotics officer, who confirmed that defendant was suspected of narcotics involvement. Officer Conway then requested that a canine officer come to the scene in order to conduct a drug dog sniff.

Officer Conway was out of warning tickets, but borrowed another officer's warning ticket book. About seven minutes after the stop began, as Officer Conway began to walk back to defendant's vehicle with the warning ticket, Officer Copeland, the canine officer, arrived. When Officer Conway reached defendant's vehicle, defendant began to attempt to get out of his car. Although Officer Conway allowed defendant to exit the car, he asked defendant if he could pat him down to make sure he had no weapons. After defendant consented to the frisk, Officer Conway had defendant step away from the car while the officer finished talking to him.

Officer Conway then returned defendant's driver's license and registration and asked defendant if there was anything illegal in the car. When defendant responded "no," Officer Conway explained to him that he was going to have a dog walk around the car. The dog sniff took a minute and a half to two minutes to conduct. Officer Copeland reported to Officer Conway that the dog, Nick, had alerted to the passenger side of the vehicle. From the time Officer Copeland arrived at the scene until the time Nick alerted, approximately four minutes elapsed. The officers then obtained defendant's keys, searched the car, and found a large quantity of marijuana.

Defendant was indicted on charges of possession with intent to sell or deliver marijuana and maintaining a vehicle for selling controlled substances. On 21 September 2006, defendant filed a motion to suppress the evidence found in his car. At the 26 September 2006 hearing on the motion, the State presented the testimony of Officers Conway and Copeland. Defendant presented no evidence. After the trial court denied the motion to suppress, defendant pled guilty, but reserved his right to appeal the denial of the motion. The trial court sentenced defendant to six to eight months imprisonment, suspended the sentence, and placed defendant on unsupervised probation for 24 months.

## Discussion

The sole issue presented on appeal is whether the trial court erred in denying defendant's motion to suppress. Defendant does not dispute the lawfulness of the traffic stop. Instead,

defendant contends that the State lacked reasonable suspicion to conduct the dog sniff.

Defendant first argues that because a dog sniff was not necessary to verify the validity of defendant's license plate, the officer was required to have reasonable suspicion to justify the need for a dog sniff apart from the traffic stop. This argument is foreclosed by *Caballes* and *Branch*, the controlling authorities with respect to canine sniffs.

In *Caballes*, a state trooper stopped the defendant for speeding. When the officer radioed the police dispatcher to report the stop, a canine officer immediately headed to the scene. 543 U.S. at 406, 160 L. Ed. 2d at 845, 125 S. Ct. at 836. Upon arrival, the canine officer walked the dog around the car while the other officer was writing the defendant a warning ticket. *Id.*, 160 L. Ed. 2d at 846, 125 S. Ct. at 836. After the dog alerted to the trunk of the car, the officers searched the trunk and found marijuana. *Id.* The entire incident took less than 10 minutes. *Id.* The Illinois Supreme Court, in holding that the dog sniff constituted an unlawful seizure, reasoned that the use of the dog converted the lawful traffic stop into a drug investigation, and because the shift in purpose was not supported by any reasonable suspicion that respondent possessed narcotics, it became unlawful, *id.* at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837—the same reasoning relied upon by defendant in this case.

In reversing the Illinois Supreme Court, however, the United States Supreme Court specifically held: "In our view, conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy. Our cases hold that it did not." *Id.* The Court explained that "any interest in possessing contraband cannot be deemed legitimate, and thus, governmental conduct that *only* reveals the possession of contraband compromises no legitimate privacy interest." *Id.* (internal quotation marks omitted). The Court, therefore, concluded that "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Id.* at 410, 160 L. Ed. 2d at 848, 125 S. Ct. at 838.

This Court first applied *Caballes* in *Branch*, in which this Court had initially held, prior to the filing of *Caballes*, that reason-

able suspicion was required before an officer conducted a canine sniff of a suspect's lawfully stopped vehicle. *See State v. Branch*, 162 N.C. App. 707, 714, 591 S.E.2d 923, 927 (2004), *disc. review improvidently allowed*, 359 N.C. 406, 610 S.E.2d 198, *vacated*, 546 U.S. 931, 163 L. Ed. 2d 314, 126 S. Ct. 411 (2005). The United States Supreme Court, however, vacated that decision for reconsideration in light of *Caballes. Branch*, 177 N.C. App. at 105, 627 S.E.2d at 507.

In *Branch*, police officers, who had stopped the defendant at a driver's license checkpoint, conducted a dog sniff of the defendant's car while another officer was obtaining information regarding the defendant over the radio. In response to the defendant's contention that even though the initial stop was lawful, the officers lacked reasonable suspicion to conduct the dog sniff, this Court held on remand:

> [O]nce the lawfulness of a person's detention is established, *Caballes* instructs us that officers need no additional assessment under the Fourth Amendment before walking a drug-sniffing dog around the exterior of that individual's vehicle. . . . Thus, based on *Caballes*, once [the defendant] was detained to verify her driving privileges, Deputies . . . needed no heightened suspicion of criminal activity before walking [the dog] around her car.

*Id.* at 108, 627 S.E.2d at 509.

Accordingly, in this case, based on *Caballes* and *Branch*, because the initial traffic stop was lawful, the officers needed no further justification in order to conduct the dog sniff. Nonetheless, defendant argues that once he was issued the warning ticket, Officer Conway was required to have reasonable suspicion to prolong the detention in order to complete the dog sniff.

In *Caballes*, the Supreme Court warned that "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." 543 U.S. at 407, 160 L. Ed. 2d at 846, 125 S. Ct. at 837. Courts applying *Caballes* have held, however, that if the detention is prolonged for only a very short period of time, the intrusion is considered *de minimis*. As a result, even if the traffic stop has been effectively completed, the sniff is not considered to have prolonged the detention beyond the time reasonably necessary for the stop.

*United States v. Alexander*, 448 F.3d 1014 (8th Cir. 2006), *cert. denied*, —— U.S. ——, 166 L. Ed. 2d 715, 127 S. Ct. 929 (2007), involves facts similar to those in this case. In *Alexander*, after a traffic stop based on probable cause, an officer told the defendant that he would give him a written warning and then asked the defendant whether there was anything illegal in his car and whether he would consent to a search of the car. *Id.* at 1015. After the defendant refused to give consent, the officer told the defendant that the officer was going to conduct a drug dog sniff and if the dog did not alert, then the defendant would be free to go. The dog alerted four minutes after the defendant was told of the warning ticket and 16 minutes after the traffic stop commenced. *Id.* at 1016.

In reviewing the trial court's denial of a motion to suppress, the Eighth Circuit first noted the rule that "[o]nce an officer has decided to permit a routine traffic offender to depart with a ticket, a warning, or an all clear, the Fourth Amendment applies to limit any subsequent detention or search." *Id.* The court added: "We recognize, however, that this dividing line is artificial and that dog sniffs that occur within a short time following the completion of a traffic stop are not constitutionally prohibited if they constitute only *de minimis* intrusions on the defendant's Fourth Amendment rights." *Id.* The court then pointed to the holding in *Caballes* that " 'conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise conducted in a reasonable manner.' " *Id.* at 1017 (quoting *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837). According to the Eighth Circuit, "[i]t is precisely this reasonableness inquiry" that led it to recognize "that the artificial line marking the end of a traffic stop does not foreclose the momentary extension of the detention for the purpose of conducting a canine sniff of the vehicle's exterior." *Id.* Because the defendant's detention in *Alexander* was, at most, extended four minutes beyond the point when the defendant was told of the warning ticket, the Eighth Circuit held that the dog sniff was legal, and the trial court properly denied the motion to suppress. *Id. See also United States v. Williams*, 429 F.3d 767, 772 (8th Cir. 2005) ("[A] brief five to six minute wait for the drug-sniffing dog is well within the time frame for finding that the stop was not unreasonably prolonged.").

The Florida District Court of Appeal applied the *Alexander* reasoning in *State v. Griffin*, 949 So. 2d 309 (Fla. Dist. Ct. App.), *disc. review denied*, 958 So. 2d 920 (2007). A canine officer had stopped the defendant for speeding and failure to maintain a single lane. *Id.* at

311. The officer called for a second officer to assist at the scene because his department's procedure required the presence of a second officer prior to conducting a dog sniff. *Id.* When the second officer arrived five to 10 minutes later, the first officer stopped writing the defendant's citation and walked his dog around the car. *Id.* The dog sniff lasted for only 20 to 90 seconds, and the defendant was arrested 15 minutes after the stop began. *Id.* Relying upon the *Alexander* analysis, the court concluded that the stop was not conducted in an "unreasonable manner or improperly delayed" and any intrusion upon the defendant's liberty interests resulting from the interruption of the writing of the citation was "*de minimis* and, therefore, not unconstitutional." *Id.* at 315. *See also Hugueley v. Dresden Police Dep't,* 469 F. Supp. 2d 507, 513 (W.D. Tenn. 2007) (holding that the plaintiff's "two and one-half minute detention following the traffic stop while [the officer] conducted a dog-sniff on the exterior of his vehicle was *de minimis,* and it did not convert the valid traffic stop into an unreasonable seizure in violation of the Fourth Amendment").

In this case, the canine unit arrived prior to Officer Conway's giving the warning ticket to defendant. Officer Conway then proceeded to explain to defendant that Officer Copeland was going to conduct a dog sniff of the exterior of defendant's car. The court found that it took the dog a minute and a half to complete the sniff. Thus, the stop was extended only for the time necessary to explain about the dog sniff and the one-and-a-half minutes of the actual sniff. We find the reasoning of *Alexander* persuasive and hold that this very brief additional time did not prolong the detention beyond that reasonably necessary for the traffic stop.

Our Supreme Court's decision in *State v. McClendon,* 350 N.C. 630, 517 S.E.2d 128 (1999), predating *Caballes,* and this Court's decision in *State v. Euceda-Valle,* 182 N.C. App. 268, 641 S.E.2d 858, *appeal dismissed, disc. review denied, and cert. denied,* 361 N.C. 698, —— S.E.2d ——, (2007), are not to the contrary. In *McClendon,* the Supreme Court "address[ed] the question of whether the further detention of defendant from the time the warning ticket was issued until the time the canine unit arrived went beyond the scope of the stop and was unreasonable." *Id.* at 636, 517 S.E.2d at 132. The Court held that "[i]n order to further detain a person after lawfully stopping him, an officer must have reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot." *Id.* The officer in that case, however, called for a canine unit only after he had already

issued the defendant a warning ticket, and the canine unit did not arrive until 15 to 20 minutes later. *Id.* at 634, 517 S.E.2d at 131. Because of the lengthy detention after the undisputed conclusion of the traffic stop, the Court had no reason to consider whether—as in this case—a *de minimis* extension of the traffic stop required additional reasonable suspicion.

In *Euceda-Valle,* this Court applied *McLendon* when a dog sniff occurred immediately after a warning ticket had been given to the defendant following a lawful traffic stop. 182 N.C. App. at 270-71, 641 S.E.2d at 862. Because the Court concluded that the trial court properly found the existence of reasonable articulable suspicion, this Court did not need to address the issue presented in this case. *Id.* at 270-71, 641 S.E.2d at 863. Further, the defendant was required to remain in the officer's patrol car while the drug sniff took place. *Id.* at 270-71, 641 S.E.2d at 862. The trial court specifically found that the defendant was, during this period of time, required to remain "in [the police officer's] control." *Id.*

In this case, in contrast to *McLendon* and *Euceda-Valle,* defendant chose, on his own initiative, to exit his car and talk with the police officer after the canine unit had already arrived. Defendant's own actions in leaving the car necessarily prolonged the stop for the modest period of time necessary to be frisked, to talk with the officer, and—in the absence of the dog sniff—to return to his car. The dog sniff added only a minute and a half beyond defendant's conversation with the officer. We hold that the trial court properly concluded that such a very brief addition of time did not extend the legitimate traffic stop so as to require application of the principle set forth in *McLendon.*

Defendant does not dispute that once Nick, the drug dog, alerted to the presence of contraband, the officers then had probable cause to conduct a search of the vehicle. *See Caballes,* 543 U.S. at 409, 160 L. Ed. 2d at 847, 125 S. Ct. at 838. We, therefore, affirm the trial court's denial of defendant's motion to suppress.

Affirm.

Judges CALABRIA and JACKSON concur.