STATE v. SELLARS

[222 N.C. App. 245 (2012)]

STATE OF NORTH CAROLINA v. WILLIAM WESLEY SELLARS, JR.

NO. COA11-1315

(Filed 7 August 2012)

**Search and Seizure—motion to suppress drugs—traffic stop— dog sniff—de minimus delay**

The trial court erred by granting defendant's motion to suppress drugs seized during a traffic stop of defendant's vehicle. Following the issuance of the warning ticket, there was a delay of four minutes and thirty-seven seconds for the dog sniff which was a *de minimis* delay that did not rise to the level of a violation of defendant's constitutional rights under the Fourth Amendment to the United States Constitution.

Appeal by the State from order entered 17 May 2011 by Judge L. Todd Burke in Forsyth County Superior Court. Heard in the Court of Appeals 22 March 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Benjamin Dowling-Sendor, for appellant-defendant.*

STEELMAN, Judge.

Under the rationale of *State v. Brimmer*, any prolonged detention of defendant for the purpose of a drug dog-sniff of defendant's vehicle was *de minimis*, and did not violate defendant's constitutional rights.

## I. Factual and Procedural Background

The State appeals the trial court's order granting defendant's motion to suppress the drugs seized during a traffic stop of William Sellers ("defendant") that occurred on 16 September 2010 in Forsyth County. The factual background is derived from the trial court's findings of fact.[1]

Detective P.L. McKaughan and Officer K.L. Jones of the Winston-Salem Police Department stopped a vehicle operated by defendant on

1. In its order, the trial court incorrectly categorized several factual rulings as conclusions of law. We treat them as findings of fact. *See State v. Hopper*, 205 N.C. App. 175, 179, 695 S.E.2d 801, 805 (2012) (reviewing an incorrectly labeled "conclusion of law" as a finding of fact).

Interstate Highway 40 because defendant's vehicle weaved out of his lane of travel on two occasions. After Detective McKaughan activated his blue lights, defendant pulled over to the shoulder of the highway within a few seconds. Detective McKaughan and Officer Jones had a drug dog present in their car at the time of the stop. After stopping defendant, Detective McKaughan was immediately able to determine that defendant was not suffering from any impairment that would inhibit his ability to safely operate his motor vehicle.

Detective McKaughan asked for defendant's driver's license. The detective noticed that defendant's hand was shaking as he handed the license to the detective. Defendant's heart was beating fast, but defendant did not display "extreme nervousness." Detective McKaughan informed defendant he would not receive a traffic citation.

Detective McKaughan asked defendant to accompany him to the police vehicle. While defendant and Detective McKaughan engaged in "casual conversation" in the police car, Officer Jones stood outside defendant's vehicle. Defendant was polite, cooperative, and responsive to Detective McKaughan's questions. Upon entering defendant's identifying information into his on-board computer, Detective McKaughan found an "alert" posted by the Burlington Police Depart-ment indicating that defendant was a "drug dealer" and a "known felon."

After discovering the alert, Detective McKaughan determined that he would have the drug dog conduct an open-air sniff of defendant's vehicle. He then returned defendant's driver's license and issued defendant a warning ticket. With defendant still sitting in the police car, Detective McKaughan asked defendant whether he had any drugs or weapons in his car. Defendant denied having any drugs or weapons in his car. Detective McKaughan asked for consent to allow the officers to conduct an open-air drug dog sniff of the vehicle. Defendant refused. Detective McKaughan directed defendant to stand near Officer Jones while the drug dog sniff was conducted. He retrieved the drug dog, "Basco", from the police car, and conducted an open-air sniff of the exterior of the defendant's vehicle. Basco alerted to the presence of narcotics in the vehicle. Detectice McKaughan searched defendant's vehicle and found a bag of cocaine.

The trial court did not make findings of fact regarding where Basco was located throughout the traffic stop and how much time transpired after the police returned defendant's license before Basco alerted. However, the record contains a video recording of the traffic stop. Basco can be heard breathing and barking in the back seat of

the police vehicle during the stop. He remained there until defendant exited the police vehicle. The video also reveals that after the police issued the warning ticket and returned defendant's license, four minutes and thirty-seven seconds elapsed before Basco alerted on defendant's vehicle.

On 29 November 2010, defendant was indicted for trafficking in cocaine, 200–400 grams, and for possession with intent to sell or deliver cocaine. On 11 April 2011, defendant filed a motion to suppress the evidence discovered in his motor vehicle. The trial court granted defendant's motion to suppress, concluding that the police lacked reasonable suspicion to detain defendant after issuing the warning ticket and returning defendant's license.

The State timely appealed and certified, pursuant to N.C. Gen. Stat. § 15A-979(c) (2011), "that this appeal [was] not taken for the purpose of delay and that the evidence suppressed as a result of the Court's Order [was] essential to the prosecution of the case."

## II. Motion to Suppress

In its only argument on appeal, the State contends that the trial court erred granting defendant's motion to suppress. We agree.

### A. Standard of Review

Our review "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Whether the trial court has correctly applied the relevant legal principles to the findings of fact is a question of law we review *de novo*. *See State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001).

### B. Analysis

The State challenges several of the trial court's findings of fact as well as the trial court's conclusions based on those findings.

#### 1. State's Challenges to Findings of Fact

The State makes several challenges to the trial courts findings of fact. We hold that all these challenges are both without merit and not determinative of the resolution of this appeal.

## 2. State's Challenges to Legal Conclusions

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, when a police officer has probable cause to believe a crime has occurred, he may arrest the suspect without a warrant. *See, e.g., Beck v. Ohio*, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 145 (1964). Officers have probable cause to arrest if "at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Id.*.

The Fourth Amendment also applies to seizures that fall short of an arrest. *Terry v. Ohio*, 392 U.S. 1, 9, 20 L. Ed. 2d 889, 899 (1968). These so-called "*Terry* stops" can be justified by a lesser standard: reasonable articulable suspicion. *See Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 309 (1990). "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906.

An officer's stop of a car and detention of the driver for a traffic violation is a seizure under the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 255, 168 L. Ed. 2d 132, 138 (2007). Defendant does not contend that the stop of his vehicle was unreasonable and the lawfulness of this initial stop is not the subject of this appeal.

The trial court held that the officers lacked reasonable suspicion to continue to detain defendant once the original purpose of the stop was concluded. Therefore, the search of defendant's vehicle was improper and in violation of defendant's rights under the Fourth Amendment to the United States Constitution. On appeal, the State makes two arguments: (1) the officers had a reasonable suspicion to extend the stop of defendant after he was issued the warning ticket and his driver's license was returned; and (2) any prolonged detention was *de minimis* and therefore did not violate defendant's Fourth Amendment rights. Since we hold that any prolonged detention was *de minimis* and reverse the trial court on that basis, we do not reach the State's argument on reasonable suspicion.

There are two lines of cases from the North Carolina Court of Appeals which appear to reach contradictory conclusions on the

question of whether a *de minimis* delay implicates a defendant's Fourth Amendment rights. Upon closer examination of the facts and timing of these decisions, we hold that they are reconcilable.

In the 1998 case of *State v. Falana*, we held that, "Once the original purpose of the stop has been addressed, there must be grounds which provide a reasonable and articulable suspicion to justify further delay." 129 N.C. App. 813, 816, 501 S.E.2d 358, 360 (1998) (citing *Terry*, 392 U.S. 1, 20 L. Ed. 2d 889). After the officer issued defendant a warning ticket, the officer conducted a dog-sniff of defendant's vehicle. *Id.* at 815, 501 S.E.2d at 359. The dog alerted, and the officers discovered cocaine in the vehicle. *Id.* On appeal, the Court reversed the denial of defendant's motion to suppress because the officer lacked reasonable articulable suspicion to detain defendant once the warning ticket had been issued. *Id.* at 817, 501 S.E.2d at 360. There was no discussion in *Falana* of the extent of the delay or whether a *de minimis* delay implicated defendant's Fourth Amendment rights.

Subsequent cases followed the rationale of *Falana*. *State v. Fisher*, ____ N.C. App. ____, ____, 725 S.E. 2d 40, 45 (2012)(holding that police had reasonable, articulable suspicion to continue to detain defendant even after issuing a warning ticket); *State v. Jackson*, 199 N.C. App. 236, 240, 681 S.E. 2d 492, 495 (2009) (holding that "a passenger in a car that has been stopped by a law enforcement officer is still seized when the stop is extended."); *State v. Hodges*, 195 N.C. App. 390, 399, 672 S.E. 2d 724, 730-31 (2009) (holding that because police had reasonable, articulable suspicion that defendant had drugs or contraband inside the vehicle the extended detention of the defendant was not unreasonable); *State v. Myles*, 188 N.C. App. 42, 51, 654 S.E. 2d 752, 758 (2008) (holding that police did not have reasonable, articulable suspicion to continue detaining the defendant after the purpose of the initial traffic stop was completed); *State v. Euceda-Valle*, 182 N.C. App. 268, 274-75, 641 S.E. 2d 858, 863 (2007) (holding that because police had reasonable articulable suspicion that criminal activity was afoot, the canine sniff of the vehicle after the initial purpose of the traffic stop was completed did not violate the defendant's Fourth Amendment rights). None of these cases discussed the concept of a *de minimis* delay.

In the 2007 case of *State v. Brimmer*, this Court first discussed and applied the "*de minimis*" rule, holding that, "[I]f the detention is prolonged for only a very short period of time, the intrusion is considered *de minimis*. As a result, even if the traffic stop has been

effectively completed, the sniff is not considered to have prolonged the detention beyond the time reasonably necessary for the stop." 187 N.C. App. 451, 455, 653 S.E.2d 196, 198 (2007). In that case, the canine unit arrived before the officer gave the defendant a warning ticket. *Id.* at 457, 653 S.E.2d at 199. After defendant received a warning ticket and his license from the officer, the drug dog sniffed his vehicle. *Id.* at 453, 653 S.E.2d at 197. The dog-sniff extended the stop for an additional one-and-a-half to two minutes. *Id.* The dog alerted, and the officers found a large quantity of marijuana. *Id.* This Court affirmed the denial of defendant's motion to supress. *Id.* at 458, 653 S.E.2d at 200.

The difference between *Falana* and *Brimmer* is that *Brimmer* incorporated the analysis contained in later United States Supreme Court and federal cases that were not in existence at the time *Falana* was decided. Most significant were the cases of *Illinois v. Caballes,* 543 U.S. 405, 160 L.Ed 842 (2005) and subsequent federal District Court and Court of Appeals decisions interpreting *Caballes. See Brimmer,* 187 N.C. App. at 454–57, 653 S.E.2d at 197–200. *Brimmer* followed and adopted the *de minimis* approach of the United States Court of Appeals for the Eight Circuit in the case of *United States v. Alexander,* 448 F.3d 1014 (8th Cir. 2006) which was based on *Caballes. See* 187 N.C. App. At 456, 653 S.E.2d at 198-99.

In *Caballes,* the United States Supreme Court applied *Terry* principles to the dog-sniff of a vehicle that occurred during a traffic stop. An Illinois State Trooper stopped defendant for speeding. *Caballes,* 543 U.S. at 406, 160 L. Ed. 2d at 845. When the trooper radioed the police dispatcher to report the stop, a drug interdiction taskforce officer overheard the call and went to the scene with his drug dog. *Id.* at 406, 160 L. Ed. 2d at 845–46. While the first trooper was in the process of writing a warning ticket, the taskforce officer walked his dog around defendant's vehicle. *Id.* at 406, 160 L. Ed. 2d at 846. The dog alerted at the trunk, the officers searched the trunk, and discovered marijuana. *Id.* at 406, 160 L. Ed. 2d at 846. The Court noted that "[t]he entire incident lasted less than 10 minutes." *Id.* at 406, 160 L. Ed. 2d at 846.

In *Caballes,* the United States Supreme Court framed the issue on appeal narrowly: "Whether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop." 543 U.S. at 407, 160 L. Ed. 2d at 846. In its analysis, the Supreme Court held, "conducting a dog sniff would not change the character of a traffic stop

**STATE v. SELLARS**

[222 N.C. App. 245 (2012)]

that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy." *Id.* at 408, 160 L. Ed. 2d at 837. *Caballes* reversed the Illinois Supreme Court:

[T]he use of a well-trained narcotics-detection dog—one that "does not expose noncontraband items that otherwise would remain hidden from public view,"—during a lawful traffic stop, generally does not implicate legitimate privacy interests. In this case, the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation. Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement.

*Id.* at 409, 160 L. Ed. 2d at 847 (internal citation omitted) (quoting *United States v. Place*, 462 U.S. 696, 707, 77 L. Ed. 2d 110, 121 (1983)). The Court went on to conclude that "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Id.* at 410, 160 L.Ed.2d at 848.

In *State v. Branch*, on remand to apply *Caballes*, this court held:

[O]nce the lawfulness of a person's detention is established, *Caballes* instructs us that officers need no additional assessment under the Fourth Amendment before walking a drug-sniffing dog around the exterior of that individual's vehicle. . . . Thus, based on *Caballes*, once [the defendant] was detained to verify her driving privileges, Deputies . . . needed no heightened suspicion of criminal activity before walking [the dog] around her car.

*State v. Branch*, 177 N.C.App. 104, 108, 627 S.E.2d 506, 509 (2006).

In *United States v. Alexander*, 448 F.3d 1014 (8th Cir. 2006), the 8th circuit expanded upon the reasoning in *Caballes* and embraced the *de minimis* approach to traffic stops. Defendant, Alexander, was stopped due to his car having only one of the required two California license plates. After the officer indicated that he was only going to issue him a warning, the officer then asked for permission to search the vehicle. Alexander declined. *Id.* at 1017. The officer then told Alexander that he would be conducting a dog sniff test on the car and if nothing was detected he would be free to leave. *Id.* The drug dog alerted to the car and a subsequent search revealed drugs in the vehicle. The drug sniff test was completed approximately four minutes after Alexander was told he would be receiving a warning ticket. *Id.* The court held that this four-minute detention was *de minimis*:

Once an officer has decided to permit a routine traffic offender to depart with a ticket, a warning, or an all clear, the Fourth Amendment applies to limit any subsequent detention or search. *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 648 (8th Cir.1999). We recognize, however, that this dividing line is artificial and that dog sniffs that occur within a short time following the completion of a traffic stop are not constitutionally prohibited if they constitute only *de minimis* intrusions on the defendant's Fourth Amendment rights. *Id.* at 649; *see also Martin*, 411 F.3d at 1002.

448 F.3d at 1016. The court went on to hold that the artificial line marking the end of a traffic stop does not foreclose the momentary extension of the detention for the purpose of conducting a canine sniff of the vehicle's exterior. *Id.* at 1017.

We conclude that the *Falana* line of cases did not consider the *de minimis* analysis created by *Caballas* and *Alexander*. However, the latter case of *Brimmer* allowed police to extend a traffic stop for the purpose of a dog sniff for a *de minimis* amount of time. Under *Brimmer* this *de minimis* rule applies in North Carolina.

In *Brimmer*, the dog sniff was *de minimis* because the police detained defendant for an additional one-and-a-half to two minutes. 187 N.C. App. at 453, 653 S.E.2d at 197. In *Alexander* the dog sniff was held to be *de minimis* because defendant was only detained an additional four minutes. 448 F.3d at 1017. In the instant case, following the issuance of the warning ticket, there was a delay of four minutes and thirty-seven seconds for the dog sniff. We hold that this was a *de minimis* delay that did not rise to the level of a violation of defendant's constitutional rights under the Fourth Amendment to the United States Constitution. The trial court erred in granting defendant's motion to suppress.

REVERSED and REMANDED.

Judges ELMORE and STROUD concur.