STATE OF NORTH CAROLINA v. KENTON JEROME FALANA

No. COA97-1144

(Filed 16 June 1998)

**Searches and Seizures § 81 (NCI4th)— cocaine—seized during traffic stop—no reasonable and articulable suspicion**

The trial court erred by denying defendant's motion to suppress cocaine seized following a traffic stop where, assuming that the initial stop was valid, the detention of defendant after the issuance of a warning ticket was improper. The trooper's justification of his search of defendant's vehicle was based on his opinion that defendant was nervous and on the passenger being uncertain as to what day their trip had begun. *State v. Pearson,* 348 N.C. 272, compels the conclusion that the trooper's suspicions, even if genuine, did not reach the level of reasonable and articulable suspicion.

Appeal by defendant from judgment entered 13 April 1995 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 2 April 1998.

*Attorney General Michael F. Easley, by Assistant Attorney General Jane R. Garvey, for the State.*

*Robert H. Edmunds, Jr. for defendant-appellant.*

WALKER, Judge.

The defendant was indicted on charges of trafficking in cocaine by possession, trafficking in cocaine by transportation and carrying a concealed weapon. The defendant moved to suppress the evidence seized during a search of his vehicle on 16 June 1993. After hearing the evidence, the trial court denied the motion. On 2 May 1995, the defendant pled guilty to two Level II trafficking felonies (the firearm charge was dismissed) and was sentenced to an active term of fourteen years. At the conclusion of sentencing, the defendant gave notice of appeal to this Court. On 16 November 1995, this Court dismissed the defendant's appeal.

On 7 March 1996, the defendant filed a *pro se* motion for appropriate relief alleging ineffective assistance of counsel. A hearing on this matter was held during the 18 August 1997 criminal session of the

Guilford County Superior Court. The trial court ruled that the defendant had forfeited his right to appeal through no fault of his own and allowed the defendant to withdraw his prior guilty plea. The defendant again entered into a negotiated guilty plea to the two drug charges. Notice was given prior to the entry of plea that the defendant would appeal the denial of his motion to suppress. The trial court accepted the negotiated plea and again imposed a fourteen-year sentence.

From the evidence at the suppression hearing the trial court made findings which tended to show the following: On Wednesday, 16 June 1993, Trooper Tim Cardwell (Cardwell) of the North Carolina Highway Patrol was patrolling on Interstate 85 in Guilford County. At approximately 8:00 a.m., Cardwell noticed a Pontiac LeMans vehicle traveling approximately 60 miles per hour in a 65 miles per hour speed limit zone. Cardwell watched the vehicle for approximately one-half mile and during this time he observed the vehicle weaving within its own lane twice and touching the plane of the divider line to the adjoining lane once.

Cardwell stopped the vehicle, and upon request, the defendant driver presented his South Carolina driver's license and vehicle registration. Cardwell testified that it was his intention to determine whether the defendant was tired or impaired and asked him to step back to the patrol car.

Once in the patrol car, Cardwell advised the defendant as to the reason he was stopped and inquired as to whether he was fatigued or had been drinking. The defendant responded that he was very tired and had been driving all night with just a few hours of sleep. Cardwell did not detect an odor of alcohol and there was no indication that the defendant was under the influence of any impairing substance. Cardwell did observe that the defendant was breathing rapidly and would periodically pause in his speech and swallow. From these observations, Cardwell opined that the defendant was nervous.

Upon further questioning, the defendant told Cardwell that he had been visiting family and friends in New Jersey for approximately three days and was returning home to South Carolina. He then identified the passenger in his vehicle as Delois Simmons, his girlfriend. At this point, Cardwell had determined that the defendant was not impaired and intended to issue a warning ticket. Before doing so he asked the defendant if Ms. Simmons had any identification on her and

the defendant responded affirmatively. Cardwell then told the defendant to remain in the patrol car while he spoke with Ms. Simmons.

Ms. Simmons provided Cardwell with a South Carolina identification card, confirmed that she was the defendant's girlfriend, and told Cardwell that they had been visiting friends in New Jersey and had been there since Saturday or Sunday.

Cardwell then radioed for backup assistance and began a validity check on the defendant's driver's license and requested a warrants check on both the defendant and Ms. Simmons. Trooper Stephenson arrived just as Cardwell received negative results on the warrants check. Cardwell then issued a warning ticket to the defendant and returned the defendant's documents. Cardwell testified that, in his mind, the defendant was "free to leave" at this point.

As the defendant was exiting the patrol car, Cardwell asked him whether he had anything illegal in his vehicle. Defendant replied that he did not; however, Cardwell became suspicious because the defendant continued to breathe rapidly and appeared to be nervous and because of Ms. Simmons' statement that they had been in New Jersey since Saturday or Sunday.

Cardwell then asked if he could search the vehicle and the defendant refused. When Cardwell asked again to search the vehicle, the defendant inquired as to whether Cardwell had a search warrant. Upon receiving a negative response, the defendant again refused a search of the vehicle. Cardwell then stated that he was going to have a trained dog (Lobo), which was in the rear of his patrol car, sniff the exterior of the defendant's vehicle.

After walking around the defendant's vehicle twice, Lobo sniffed heavily near the passenger door and "alerted" to the presence of narcotics in the vehicle. Cardwell advised the defendant that he was going to search the vehicle. Cardwell entered the vehicle and looked inside the glove box where he found a gun. He then continued searching the vehicle and found a brown paper bag which had inside it a clear plastic bag which contained a substance he believed to be cocaine. The defendant was then placed under arrest.

The trial court concluded the following:

1. Trooper Cardwell had a reasonable basis for stopping Mr. Falana's vehicle based on the vehicle weaving within its lane and partially crossing the center line, and the stop was not pretextual.

2. The exterior sniff of the vehicle by Lobo was not a search. United States v. Place, 462 U.S. 696 (1983).

3. Based on the nervousness of Mr. Falana and his passenger's uncertainty about the day the trip had begun, and upon the minimal intrusion of the exterior sniff and the short amount of time it took to accomplish the "sniff," the exterior sniff was a reasonable investigatory tool to use under the circumstances of this case. See United States v. Morales-Zamora, 914 F.2d 200 (1990).

4. The signal by the trained narcotics dog "Lobo" gave Trooper Cardwell probable cause to search the vehicle.

5. Mr. Falana's fourth amendment rights have not been violated.

6. The motion to suppress should be denied.

Defendant argues first that the stop of his vehicle was pretextual and therefore invalid. In the alternative, he argues that even if the initial stop of the vehicle was valid, his detention after the issuance of the warning ticket was invalid as it was not based on a reasonable and articulable suspicion that he was involved in criminal activity.

For the purposes of this opinion, we will assume that the initial stop of the defendant was valid as we conclude that the detention of the defendant after the issuance of the warning ticket was improper.

Generally, "the scope of the detention must be carefully tailored to its underlying justification." *State v. Morocco*, 99 N.C. App. 421, 427-28, 393 S.E.2d 545, 549 (1990) (*quoting Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238 (1981)). Once the original purpose of the stop has been addressed, there must be grounds which provide a reasonable and articulable suspicion in order to justify further delay. *See Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968).

The circumstances in our Supreme Court's recent opinion in *State v. Pearson*, 348 N.C. 272, —— S.E.2d —— (1998), are substantially similar to those in the instant case. In *Pearson*, the Supreme Court reversed this Court and held that the seizure of contraband from the defendant's person was improper and that his motion to suppress this evidence should have been granted.

In *Pearson*, the following circumstances were the basis of the officer's suspicions that the defendant was armed and dangerous:

(1) the defendant had an odor of alcohol, (2) the defendant acted nervous and excited, and (3) the defendant made statements inconsistent with those of the passenger with regard to their whereabouts the night before. The Supreme Court determined that these circumstances were insufficient, when considered as a whole, "[to] warrant a reasonable belief that criminal activity was afoot . . . ." Specifically, the Court stated, "[t]he nervousness of the defendant is not significant. Many people become nervous when stopped by a state trooper. The variance in the statements of the defendant and his fiancée did not show that there was criminal activity afoot." *Id.* Thus, the Court held that "the circumstances . . . did not justify a nonconsensual search of the defendant's person."

Here, Cardwell justified his search of the defendant's vehicle based on his opinion that the defendant was nervous and because the passenger was uncertain as to what day their trip had begun. Pursuant to *Pearson*, we are compelled to conclude that Cardwell's suspicions, even if genuine, did not reach the level of "reasonable and articulable suspicion that criminal activity was afoot" and were insufficient to support a further detention of the defendant once the warning ticket was issued and the defendant's papers were returned.

Therefore, the trial court's order denying the defendant's motion to suppress is

Reversed.

Judges WYNN and MARTIN, John C., concur.