STATE OF NORTH CAROLINA, Plaintiff,
v.
BENJAMIN ANTONIO VALDOVINOS, Defendant.
No. COA06-1485-2
Court of Appeals of North Carolina
Filed January 6, 2009
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Ashby T. Ray, for the State.
Law Offices of J. Darren Byers by J. Darren Byers for defendant-appellant.
STROUD, Judge.
On 20 November 2007 this Court affirmed the order of the trial court denying defendant's motion to suppress in an unpublished opinion reported at 187 N.C. App. 307, 652 S.E.2d 751 (2007) ("Valdovinos I") (the full opinion is available at State v. Valdovinos, 2007 N.C. App. LEXIS 2350 (N.C. Ct. App. Nov. 20, 2007)). Defendant petitioned the Supreme Court of North Carolina for discretionary review. The Supreme Court granted discretionary review "for the limited purpose of remanding this case to the Court of Appeals for reconsideration of its decision in light of Brendlin v. California, ___ U.S. ___, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007)."[1] 362 N.C. 243, 660 S.E.2d 543 (2008). After consideration of Brendlin, we reaffirm the trial court.
In Valdovinos I, this Court relied on State v. Melvin, 53 N.C. App. 421, 424, 281 S.E.2d 97, 100 (1981), cert. denied, 305 N.C. 762, 292 S.E.2d 473 (1982) and Rakas v. Illinois, 439 U.S. 128, 58 L. Ed. 2d 387 (1978) to conclude that because defendant was "[a] passenger in a vehicle which he [did] not own or have a possessory interest in, and was not driving at the time of the search, [he] ha[d] no legitimate expectation of privacy in the vehicle, and therefore ha[d] no standing to assert Fourth Amendment rights in the vehicle." 2007 N.C. App. LEXIS 2350, at *4-5. We did not, however, separately consider defendant's standing to contest the legality of the stop of the vehicle, the sole issue addressed in Brendlin.[2] On remand, per the instructions of the Supreme Court of North Carolina, we first consider defendant's standing to challenge the stop of the vehicle. Brendlin is clear on this point, holding that "[w]hen a police officer makes a traffic stop, . . . a passenger is seized as well [as the driver] and so may challenge the constitutionality of the stop." ___ U.S. at ___, 168 L. Ed. 2d at 136. Accordingly, we must conclude that defendant had standing to challenge the stop of the vehicle. Furthermore, because the detention of the vehicle subsequent to the stop is also part of the seizure of the vehicle, see State v. Falana, 129 N.C. App. 813, 817, 501 S.E.2d 358, 360 (1998) (even assuming the initial stop is constitutionally permissible, an unjustified delay after the ticket is issued and the defendant's papers are returned is an unreasonable seizure in violation of the Fourth Amendment), we conclude that defendant also has standing to challenge the detention of the vehicle subsequent to the stop.
However, moving to the merits of defendant's motion to suppress, we conclude that the stop and subsequent detention of the vehicle did not violate defendant's Fourth Amendment rights. Accordingly, for the reasons that follow, we reaffirm the order of the trial court denying defendant's motion to suppress.
Defendant concedes that the traffic stop, based on failure to give a left turn signal and lack of a rear view mirror, was constitutionally valid. However, he contends that the vehicle was detained longer than necessary to effectuate the original purpose of the stop, and therefore unconstitutional according to the rule set forth by this Court in Falana, 129 N.C. App. at 816, 501 S.E.2d at 360: "Once the original purpose of the stop has been addressed, there must be grounds which provide a reasonable and articulable suspicion in order to justify further delay." Id. In Falana, the trooper became suspicious when the defendant acted nervously and the defendant's passenger couldn't remember exactly what day they began their trip. 129 N.C. App. at 815, 501 S.E.2d at 359. The trooper twice requested consent to search the vehicle; twice consent was refused. Id. This Court concluded that the trooper's "suspicions, even if genuine, did not reach the level of `reasonable and articulable suspicion that criminal activity was afoot' and were insufficient to support a further detention of the defendant once the warning ticket was issued and the defendant's papers were returned." 129 N.C. App. at 817, 501 S.E.2d at 360.
Rather than Falana, we conclude that the detention of the vehicle sub judice is apposite to State v. Morocco, 99 N.C. App. 421, 393 S.E.2d 545 (1990). In Morocco, "[t]he defendant argue[d] that he was illegally detained for [] three minutes." 99 N.C. App. at 428, 393 S.E.2d at 549. Morocco stated that "[t]he question whether the [defendant's remaining at the scene after the conclusion of the traffic stop] was in fact voluntary or was the product of duress or coercion, expressed or implied, is to be determined by the totality of all the circumstances." 99 N.C. App. at 428, 393 S.E.2d at 549 (citation, quotation marks and ellipses omitted). After reviewing the facts, this Court affirmed the denial of the defendant's motion to suppress, concluding [t]he defendant was a six-foot, 200-pound, thirty-eight-year-old man with prior military service. Trooper Lowry had returned all of the defendant's belongings and had issued the warning ticket. Furthermore, defendant's spoken consent carried with it an implied willingness to wait for Lowry to fill out the consent form. Thus, we conclude the defendant briefly remained in the patrol car "voluntarily in a spirit of apparent cooperation." He was not illegally seized.
Id. at 428-29, 393 S.E.2d at 549.
In the case sub judice, the trial court found that the driver "freely, voluntarily and knowingly consented" to delay in order to allow law enforcement to search the interior of the vehicle. This finding was supported by competent evidence: (1) law enforcement asked for consent to search the vehicle about thirty seconds after the ticket had been issued and the driver's papers returned, and (2) the driver testified that he voluntarily consented to the search. There was no evidence in the record that the driver were coerced, placed under duress, or otherwise unduly influenced into remaining on the scene after the purpose of the traffic stop had been effectuated. Therefore, we hold that the trial court did not err when it concluded that the traffic stop did not violate defendant's Fourth Amendment rights. Accordingly, the order of the trial court denying defendant's motion to suppress is reaffirmed.
AFFIRMED.
Judges McCULLOUGH and BRYANT concur.
Report per Rule 30(e).
The judges concurred prior to 31 December 2008.
NOTES
[1] Defendant devotes much of his supplemental brief to a discussion of Georgia v. Randolph, 547 U.S. 103, 164 L. Ed. 2d 208 (2006). However, the Supreme Court ordered this Court review only in light of Brendlin. Arguments based on Randolph are therefore beyond the scope of this appeal and will not be considered. Even if we were to consider defendant's Randolph arguments, they have no application sub judice. Randolph held that "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." 547 U.S. at 122-23, 164 L. Ed. 2d at 227. Notwithstanding defendant's attempts to equate "the police . . . effectively prevented a possibly objecting passenger from . . . knowing of the [driver's] consent [to the search]" with the express refusal of consent by an inhabitant in a home, Randolph is easily distinguishable from the case sub judice. (Emphasis added.)
[2] The defendant in Brendlin "did not assert that his Fourth Amendment rights were violated by the search of [his codefendant's] vehicle . . . ." ___ U.S. at ___, 168 L. Ed. 2d at 137.