STATE OF NORTH CAROLINA v. DAVID EDWARD HODGES

No. COA08-474

(Filed 17 February 2009)

**1. Search and Seizure— traffic stop—cocaine—probable cause—extended detention**

The trial court did not err in an attempted trafficking by possessing and transporting cocaine and conspiracy to traffic cocaine case by concluding an officer did not conduct an unreasonable search of the car defendant was driving and seizure of cocaine therefrom because: (1) competent evidence existed to support the trial court's findings of fact; (2) defendant's argument concerning the constitutionality of the initial stop was abandoned under N.C. R. App. P. 28(b)(6) based on defendant's failure to make this argument in his brief; (3) even if defendant had not abandoned this issue, the officer possessed probable cause to stop defendant for speeding and possessed the necessary reasonable suspicion to briefly detain defendant to investigate whether he and the passenger of the car possessed drugs or other contraband, including evidence of defendant's misidentification of the passenger, defendant's exhibited nervousness, and a detective warning the officer to be careful in conducting the traffic stop since a narcotics surveillance was conducted on the vehicle with observance of the passenger appearing to place something under his seat believed to be drugs or a weapon; and (4) defendant's detention for fifteen minutes, from the time the officer activated his blue lights until he found the cocaine, was not excessive.

**2. Evidence— hearsay—consent to search vehicle—not offered for truth of matter asserted—waiver of standing—motion to suppress**

The trial court did not err in an attempted trafficking by possessing and transporting cocaine and conspiracy to traffic co-

**STATE v. HODGES**

[195 N.C. App. 390 (2009)]

caine case by denying defendant's motion to suppress evidence of the passenger's consent to search the vehicle because: (1) defendant waived any standing he may have had to challenge the passenger's consent to search the rental vehicle by informing the officer that he had to ask the passenger who rented the vehicle for permission to search the car; and (2) even if defendant had standing to contest the passenger's consent and did not waive it, the evidence was not hearsay when it was not used to prove the truth of the matter asserted and instead the evidence was used to explain why the officer believed he could conduct the search of the vehicle and proceeded to search the vehicle.

Appeal by defendant from judgments entered 31 October 2007 by Judge Lindsay R. Davis, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 22 October 2008.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General William N. Farrell, Jr. and Assistant Attorney General John P. Scherer II, for the State.*

*Mary March Exum for defendant-appellant.*

HUNTER, Robert C., Judge.

David Edward Hodges ("defendant") appeals from the trial court's denial of his motion to suppress evidence. Following the denial of his motion to suppress, on 31 October 2007, defendant pled guilty to: (1) attempted trafficking by possessing more than 200 grams of cocaine, (2) attempted trafficking by transporting more than 200 grams of cocaine, and (3) conspiracy to traffic more than 200 grams of cocaine, reserving the right to appeal the denial of his motion to suppress. Defendant was sentenced to seventy to eighty-four months imprisonment for the conspiracy conviction and twelve to fifteen months for the attempt convictions; however, the latter sentence was suspended. After careful review, we affirm the trial court's denial of the motion to suppress and therefore affirm the judgments.

## I. Background

The State's evidence tended to show that on 22 November 2006, Detective James Armstrong ("Detective Armstrong"), the head of the Greensboro Police Department's narcotics division ("Greensboro vice") and other Greensboro vice officers were conducting surveil-

lance at a residence located at 3127 Shallowford Drive as well as on a man named Valderramas, a suspected high-level narcotics distributor. Burlington police detectives had contacted Greensboro vice and informed them that a confidential informant told them that Valderramas had large amounts of cash and was possibly delivering cash or drugs to various locations on 22 November 2006. Previously, in December 2005 and early November 2006, Greensboro vice had also received direct tips from two confidential informants that a resident of 3127 Shallowford Drive, a man named Lopez, acted as a middleman between a high-level narcotics distributor and buyers and conducted narcotics sales at said residence. The informants also provided details as to how the sales were conducted, stating that when buyers arrived at the residence, Lopez would take them to a detached garage behind the residence where the money and drugs were exchanged.

On 3 November 2006, Greensboro vice had conducted an undercover purchase of a half kilogram of cocaine at the 3127 Shallowford residence; the sale followed the pattern described by the informants. During the 3 November sale, Greensboro vice observed Valderramas standing in the yard and leave in his truck shortly after the completion of the sale. Based on the 3 November undercover sale, Greensboro vice began to conduct surveillance on Valderramas. On numerous occasions, from 3 November until 22 November 2006, officers observed Valderramas proceed to a house in Gibsonville, open the hood of his truck, put a package under the hood, and leave for various suspected narcotics locations in the Burlington and High Point area.

On 22 November, officers observed Valderramas's truck, Lopez's vehicle, and a white Ford Focus at the Shallowford Road residence. Detective Brian Williamson ("Detective Williamson") conducted the surveillance and radioed his observations to Detective Armstrong and other officers. Detective Williamson observed Valderramas walk from the back of the house to his truck, open the hood, "mess[] there" for a short period of time, close the hood, and return to the backyard. However, because his view was obstructed, Detective Williamson could not see if Valderramas was carrying anything nor could he see what was transpiring in the backyard. Approximately five minutes later, he observed Valderramas return to the front of the house with Lopez and another man, later identified as Lancelot Muir ("Muir"). Valderramas got into his truck, Lopez went inside the house, and Muir got into the passenger side of the white Ford Focus. At no point did

Detective Williamson actually observe any exchange of narcotics or see any packages that possibly contained narcotics.

Based on their experience and training, the surveillance of the Shallowford Road residence and Valderramas, and the 3 November 2006 undercover buy, Detectives Williamson and Armstrong believed that the white Ford Focus contained a buyer of narcotics. Consequently, they followed the Focus as it left the residence and headed toward Winston-Salem.[1]

As he followed the Focus on Interstate 40, Detective Armstrong radioed Greensboro Police Department Officer Lester Prescott ("Officer Prescott"), who was on routine highway patrol on Interstate 40, and informed him that Greensboro vice was conducting narcotics surveillance on the vehicle and that he noticed the Focus may have been speeding. Detective Armstrong asked Officer Prescott if he could make his own observation as to the vehicle's speed or another traffic violation, and if so, to conduct a traffic stop. He further informed Officer Prescott that he and other officers would set up a perimeter should he need it.

Officer Prescott followed the Focus and observed it speeding and constantly changing lanes. When Officer Prescott initiated his lights to stop the vehicle, Detective Armstrong noticed the passenger look back toward Officer Prescott's vehicle and appear to conceal something underneath the passenger's seat. He then radioed Officer Prescott and told him that he believed the passenger was hiding either narcotics or a weapon under the seat and warned him to be careful.

After stopping the Focus, Officer Prescott approached the vehicle and requested defendant's license and registration. Defendant handed Officer Prescott his driver's license and a car rental contract and stated that the car had been rented in the passenger's name. The passenger, Muir, also gave Officer Prescott his driver's license.

Officer Prescott then asked defendant to step out of the car, took defendant to the back of the car, and told him he had stopped him for speeding. Officer Prescott also asked defendant who his passenger was. Defendant responded that the passenger was his neighbor, that his name was "Bobby," and that he did not know his last name.

---

1. According to Detective Armstrong, the Burlington DEA and the IRS followed Valderramas back to his residence.

Greensboro Police Department Officer E.C. Martin ("Officer Martin") arrived to assist, and Officer Prescott returned to his vehicle to run license and warrant checks on defendant and Muir. Before running the checks, Officer Prescott told defendant to remain standing between his police vehicle and the Focus; Officer Martin remained there with defendant for the duration of the investigation.

Officer Prescott determined that the licenses were valid and that there were no outstanding warrants on defendant or Muir. After this, he walked back to defendant, returned his license and the rental contract, and issued a verbal warning for speeding. Officer Prescott again asked defendant who his passenger was. Once again, defendant identified Muir as "Bobby," which was not consistent with Muir's driver's license, and stated that he did not know Muir's last name. Officer Prescott left defendant behind the car, had a brief conversation with Muir, and then returned to defendant.

Upon returning to defendant, Officer Prescott asked defendant if there was anything illegal in the car, and defendant said, "[n]ot that I know of." He then asked defendant for permission to search the car, and defendant told him that he would have to ask Muir. Officer Prescott returned to Muir and asked Muir for consent to search the car. Muir consented and Officer Prescott had Muir step out of the car. Prior to searching the car, Officer Prescott asked Muir if he had any large amount of cash, and Muir produced $4,000.00, which was wrapped in masking tape, from his jacket. Officer Prescott testified that Muir then consented to being searched, and during this search, Officer Prescott found an additional $3,000.00 in his pocket. Officer Prescott then proceeded to search the car and found a package, wrapped in clear plastic wrap containing what appeared to be cocaine, under the passenger seat. Consequently, he arrested defendant and Muir.

On 26 April 2006, defendant filed a motion to suppress the cocaine, asserting that the stop and search violated his state and federal constitutional rights. Prior to the hearing on defendant's motion to suppress, Muir died, the apparent victim of a homicide. On 21 August 2007, defendant filed an "Additional Basis" for its motion to suppress, claiming that the State could not introduce Muir's consent to justify the search because it constituted hearsay and violated *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004). On 23 August 2007, the trial court denied defendant's motion. On 1 November 2007, defendant filed notice of appeal.

## II. Analysis

" 'An appellate court accords great deference to the trial court's ruling on a motion to suppress because the trial court is entrusted with the duty to hear testimony (thereby observing the demeanor of the witnesses) and to weigh and resolve any conflicts in the evidence.' " *State v. Hernandez*, 170 N.C. App. 299, 303-04, 612 S.E.2d 420, 423 (2005) (citations omitted). This Court's review of the denial of a motion to suppress evidence is limited in scope to whether the "underlying findings of fact are supported by competent evidence . . . and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). The trial judge's conclusions of law are reviewed *de novo*. *State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997).

## A. Search and Seizure

**[1]** First, defendant argues that Officer Prescott conducted an unreasonable search and seizure in violation of our state and federal constitutions. Specifically, he argues that: (1) Officer Prescott lacked reasonable suspicion to detain him once he returned his driver's license and the rental contract and issued him a verbal warning for speeding; and (2) the trial court made certain erroneous findings of fact in contravention of the evidence before it. As discussed *infra*, these arguments are without merit. Briefly, we first address the contested findings of fact.

Defendant argues that the trial judge erred with regard to two findings of fact. First, defendant asserts that the trial court erroneously found that when defendant told Officer Prescott that he would have to ask Muir for consent to search the vehicle, defendant "looked down to the ground and seemed to fumble with his hands." We believe the record contains competent evidence to support the court's finding. Specifically, Officer Prescott testified that during the investigation, defendant was "quietly respectful, and he just answered what he was asked, and just kept hanging his head low. He kept . . . playing with his hands, pretty much." Officer Prescott also stated, "[defendant's] head went down, looked to the ground, and he kept his hands down in front of him." While defendant appears to argue that this testimony should have resulted merely in a finding that defendant was quiet and cooperative, we note that:

> Where the evidence is conflicting . . . , the judge must resolve the conflict. He sees the witnesses . . . as they testify and by reason of his more favorable position, he is given the responsibility of

discovering the truth. The appellate court is much less favored because it sees only a cold, written record.

*State v. Smith*, 278 N.C. 36, 41, 178 S.E.2d 597, 601, *cert. denied*, 403 U.S. 934, 29 L. Ed. 2d 715 (1971).

Defendant also argues that the trial court erred by failing to find as fact that subsequent to Officer Prescott handing back his license, issuing him a verbal warning for speeding, and indicating to him that he had to remain at the scene while he continued the investigation, Officer Prescott "then went and talked with Mr. Muir further." Defendant contends that such a finding would have constituted additional evidence that Officer Prescott was " 'further detaining' [defendant and Muir] after the traffic stop had ended." Given that the record is clear and the trial court specifically found that Officer Prescott proceeded to detain defendant and Muir and to investigate them subsequent to issuing the verbal warning and returning the documents, we fail to discern why defendant believes this finding is erroneous. Furthermore, we believe that competent evidence exists to support the trial court's finding that Officer Prescott "gave the Defendant a warning for the speeding and proceeded to continue with his investigation." Officer Prescott specifically testified that he told defendant that he was going to give him a verbal warning for speeding and admitted that he continued to investigate defendant and Muir after returning the license and registration.

In sum, because competent evidence exists to support these findings of fact, we overrule this assignment of error.

Next, defendant argues that Officer Prescott violated his state and federal constitutional rights against being subjected to unreasonable searches and seizures. In his brief, defendant makes no argument as to the constitutionality of the initial stop; accordingly, this argument is abandoned pursuant to N.C.R. App. P. 28(b)(6). Even if defendant had not abandoned this issue, the record is clear that Officer Prescott possessed probable cause to stop defendant for speeding. Here defendant specifically contends that his detention subsequent to the point at which Officer Prescott returned his license and the rental contract and issued him a verbal warning for speeding went beyond the scope of the stop and was unreasonable. As discussed *infra*, because we conclude that Officer Prescott possessed a reasonable, articulable suspicion that additional criminal activity was afoot, specifically that defendant and Muir had drugs or contraband inside the automobile, we disagree.

**STATE v. HODGES**

[195 N.C. App. 390 (2009)]

"In order to further detain a person after lawfully stopping him, an officer must have reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot." *State v. McClendon*, 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999) (citation omitted). To ascertain whether an officer has a reasonable suspicion, we examine the totality of the circumstances. *Id.* Furthermore, reasonable suspicion

" 'must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an "unparticularized suspicion or hunch." ' "

*State v. Campbell*, 359 N.C. 644, 664, 617 S.E.2d 1, 14 (2005) (citations omitted). "After a lawful stop, an officer may ask the detainee questions in order to obtain information confirming or dispelling the officer's suspicions." *McClendon*, 350 N.C. at 636-37, 517 S.E.2d at 132-33 (citations omitted). "In order for [an officer] to lawfully detain [a] defendant, [his] suspicion must be based solely on information obtained during the lawful detention of [the defendant] up to the point that the purpose of the stop has been fulfilled." *State v. Myles*, 188 N.C. App. 42, 51, 654 S.E.2d 752, 758, *affirmed per curiam*, 362 N.C. 344, 661 S.E.2d 732 (2008).

In support of his argument that his detention was unconstitutionally prolonged, defendant relies primarily on *State v. Myles* and *State v. Falana*, two cases in which this Court respectively determined that the police lacked reasonable suspicion to further detain the defendants after the purposes of the respective traffic stops had been fulfilled and thus unconstitutionally prolonged their respective detention. *Id.*; *Falana*, 129 N.C. App. 813, 501 S.E.2d 358 (1998). As discussed *infra*, we find those cases to be distinguishable from the instant case and conclude that Officer Prescott did possess the necessary reasonable suspicion to briefly detain defendant and investigate whether defendant and Muir possessed drugs or other contraband.

In *Myles*, the defendant-passenger and his driver were stopped for weaving and because the officer suspected the driver might be intoxicated. *Myles*, 188 N.C. App. at 45-46, 654 S.E.2d at 755. During the stop, the officer did not detect any evidence that the driver or the

defendant were impaired, the license check came back clear, and he did not observe any indication that contraband or weapons were present. In addition, the only factor that arguably provided support for reasonable suspicion to extend the stop which ultimately led to a dog sniff and a discovery of marijuana in the vehicle, was the driver's nervousness, which the Court concluded was not sufficient to constitute reasonable suspicion. *Id.* at 51, 654 S.E.2d at 757-58. Furthermore, the Court noted that while the officer testified that the defendant exhibited nervousness as well, the defendant did not exhibit any nervousness until after the purpose of the traffic stop had already been completed; consequently, the Court concluded that the trial court could not consider this fact to support the officer's reasonable suspicion. *Id.* at 51, 654 S.E.2d at 758.

In *Falana*, the officer stopped the car the defendant was driving because he observed the vehicle weaving within its own lane and touching the plane of the divider line to the adjoining lane; he testified that he intended to determine whether the defendant was impaired or tired. *Falana*, 129 N.C. App. at 814, 501 S.E.2d at 358-59. There, the Court stated that the only facts the officer provided to support his reasonable suspicion and to justify the subsequent dog sniff of the exterior of the car which revealed cocaine were the defendant's nervousness and the passenger's uncertainty as to the day their trip had begun; the Court concluded that these facts did not provide " 'reasonable and articulable suspicion that criminal activity was afoot[.]' " *Id.* at 817, 501 S.E.2d at 360.

Here, defendant incorrectly argues that Officer Prescott's search could only have been justified by defendant's incorrect identification of Muir, which he contends occurred only after the stop for speeding had already been fulfilled. First, we note that Officer Prescott's police report and his testimony state that he asked defendant who his passenger was before conducting the license check and repeated this line of questioning after he handed back the documentation and issued the warning for speeding. Furthermore, as the State correctly points out, there is considerably more evidence here to support Officer Prescott's reasonable suspicion to further detain defendant and Muir than was present in either *Myles* or *Falana*. Here, in addition to defendant's "misidentification" of Muir, defendant exhibited nervousness and Detective Armstrong informed Officer Prescott that: Greensboro vice had been conducting narcotics surveillance on the vehicle; that he had observed the passenger appear to place something under his seat which he believed to be drugs or a weapon; and

warned Officer Prescott to be careful in conducting the traffic stop. This is consistent with the trial court's finding of fact that

> the officer knew that the narcotics officers were interested in this car by being told to stop it in the event that they [sic] saw anything illegal. And upon stopping it, the driver appeared to be somewhat nervous by his actions, that the officer had been told that something had been put under that front seat which might be a gun or narcotics.

The trial court's findings of fact support its conclusion of law that "the officer in this case, guided by his experience and training and through his eyes of being reasonable and cautious, had a reasonable, articulable suspicion that there might be drugs in the vehicle, or some other contraband." In sum, examining the totality of the circumstances through the eyes of a reasonable and cautious officer, we conclude that Officer Prescott possessed reasonable suspicion to prolong defendant's detention.

"Having determined that [Officer Prescott] did have the requisite reasonable suspicion needed to detain defendant further, we turn to examine whether the duration of [the] detention was reasonable." *McClendon*, 350 N.C. at 639, 517 S.E.2d at 134. Here, the trial court specifically found that fifteen minutes had passed from the time Officer Prescott activated his blue lights until he found the cocaine. Furthermore, Officer Prescott specifically testified that less than five minutes passed between when he returned the documentation to defendant and when he located the cocaine. In *McClendon*, the Supreme Court of North Carolina held that a fifteen to twenty minute detention from the issuance of a warning ticket to the arrival of a drug sniffing canine was not an excessive prolongation of the traffic stop. *Id.* at 639, 517 S.E.2d at 134. Accordingly, we conclude that defendant's detention here, which was much shorter than the detention in *McClendon*, was not excessive and it was reasonable for Officer Prescott to continue his investigation for this minimal amount of time.

### B. Hearsay

[2] Next, defendant argues that the evidence of Muir's consent to search the vehicle should have been suppressed because it constitutes inadmissible hearsay testimony in violation of *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004). This argument is without merit.

First, we agree with the trial court that by informing Officer Prescott that he had to ask Muir for permission to search the car, defendant waived any standing he may have had to challenge Muir's consent to search the vehicle.

In *Rakas v. Illinois*, the United States Supreme Court held that the defendant-automobile passengers' constitutional rights were not violated where they did not assert a possessory interest in the automobile nor in the property seized from it. *Rakas*, 439 U.S. 128, 148, 58 L. Ed. 2d 387, 404 (1978) ("petitioners' claim must fail. They asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized. . . . [P]etitioners' claim is one which would fail even in an analogous situation in a dwelling place, since they made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers"); *see also State v. Little*, 27 N.C. App. 54, 56, 218 S.E.2d 184, 186 (holding that where a defendant possesses no interest in the property searched, "he lacks standing to contest [the owner's] consent to a search producing evidence that implicate[s] him") (citations omitted), *cert. denied*, 288 N.C. 512, 219 S.E.2d 347 (1975). Though defendant here was the driver rather than the passenger, we do not believe this distinction is controlling under the facts of this case as defendant claimed no ownership interest in the vehicle nor in the items within it. To the contrary, he handed Officer Prescott a rental contract in Muir's name and told Officer Prescott he would have to ask Muir for permission to search the vehicle. In other words, defendant appeared to indicate that he was not able to provide Officer Prescott with consent to search the rental vehicle and that only Muir could give consent.

In the alternative, even if defendant had standing to contest Muir's consent and did not waive it, we believe that the evidence here is not hearsay because it was not used to prove the truth of the matter asserted. N.C. Gen. Stat. § 8C-1, Rule 801(c) (2007) (" '[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). "For example, a statement made by one person to another is not hearsay if introduced for the purpose of explaining the subsequent conduct of the person to whom the statement was made." *State v. Morston* 336 N.C. 381, 399, 445 S.E.2d 1, 11 (1994). Here, this evidence was used to explain why Officer Prescott believed he could conduct the search of the vehicle and proceeded to search the vehicle. Furthermore, in *State v. Bates*, this Court held that a police offi-

**STATE v. HODGES**

[195 N.C. App. 390 (2009)]

cer's testimony that the owner of a trailer consented to the search of the home was not admitted to show the truth of the matter asserted, "but to show simply that such statement was made[.]" *Bates*, 37 N.C. App. 276, 280, 245 S.E.2d 827, 829, *review denied*, 295 N.C. 735, 248 S.E.2d 864 (1978). Accordingly, the Court concluded "the officer's testimony was not hearsay and that it was competent to show authorization to enter the trailer." *Id.* The Court further stated, "even if we found the evidence to be hearsay, *and we do not*, any error would be harmless since [the homeowner] herself testified under oath concerning the statements she made to the [officer]." *Id.* (emphasis added). Here, Muir could not testify because he was deceased. Thus, we conclude Officer's Prescott's testimony as to Muir's consent was not hearsay as it was admitted to explain his subsequent conduct and to show that Muir made this statement to him. Accordingly, we overrule this assignment of error.

### III. Conclusion

In sum, we hold that defendant's extended detention was constitutionally permissible as it was supported by a reasonable suspicion that criminal activity was afoot; thus, defendant was not subjected to an unreasonable search and seizure in violation of the state and federal constitutions. In addition, assuming *arguendo* that defendant did have standing to challenge Muir's consent to the subsequent search of the vehicle, we conclude he waived his standing by informing Officer Prescott that Muir rented the vehicle and that he would have to obtain consent from Muir to search the vehicle. In the alternative, we conclude Officer Prescott's testimony as to Muir's consent was not hearsay as it was not offered to prove the truth of the matter asserted.

·Affirmed.

Judges ELMORE and GEER concur.