STATE OF NORTH CAROLINA
v.
ISAAC JAMARGO QUICK.
No. COA08-1023
Court of Appeals of North Carolina
Filed October 6, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General John F. Oates, Jr., for the State.
Michael E. Casterline, for defendant-appellant.
CALABRIA, Judge.
Isaac Jamargo Quick ("defendant") appeals the trial court's order denying his motion to suppress evidence. We affirm.
On 2 February 2007, Officer Andrew Lanier ("Officer Lanier") of the High Point Police Department was conducting his regular patrol on Highway 29/70 in High Point, North Carolina. Officer Lanier observed a driver, who, when he saw the patrol car, shifted from a relaxed position to a position seated straight up in the seat with both hands on the wheel. Officer Lanier considered this change a sign of "nervousness." He began to follow the vehicle and checked its registration on his computer. Officer Lanier learned that the owner of the vehicle did not have a valid driver's license, but was eligible to have his license reinstated. The computer information showed that the owner of the vehicle had physical characteristics similar to those of the driver of the vehicle.
Based on this information, Officer Lanier initiated a traffic stop. After the vehicle stopped on the side of the road, Officer Lanier got out of his car and approached the passenger side of the vehicle. Defendant was sitting in the passenger seat. From the passenger window, Officer Lanier asked the driver to identify himself and the driver stated that his name was Keith Brown ("Brown"), which matched the vehicle owner information obtained through the computer search. Officer Lanier then obtained driver's licenses from both Brown and defendant and took the licenses back to his patrol car. While in his patrol car, Officer Lanier received a computer-generated alert regarding Brown, which stated that he "may give false information, [was involved in] previous drug activity, [was] known to hide drugs, and . . . ha[d] been arrested for weapons charges." Based on this information, Officer Lanier requested a canine officer. While Officer Lanier was in his patrol car writing a citation to Brown for driving without a license, the canine officer and another officer arrived on the scene in two separate patrol cars.
After writing the citation, Officer Lanier returned to Brown's vehicle and asked Brown and defendant to exit the vehicle and stand behind it while the canine search was conducted. Brown and defendant complied. Officer Lanier explained the citation to Brown while the canine officer led the dog around the outside of the vehicle. The canine officer took approximately thirty seconds to check the vehicle.
Officer Lanier gave Brown the citation and returned the driver's licenses to Brown and defendant. Officer Lanier then asked Brown if he could ask him a few more questions. Brown agreed, and Officer Lanier then asked him if he could search the vehicle. Brown consented, saying, "I don't care if you search my car." During this conversation, defendant and Brown were standing beside each other. Officer Lanier did not ask defendant any questions, nor did defendant make any statements to Officer Lanier after Brown consented to the search.
The canine search of the car's exterior was completed before Brown gave Officer Lanier consent to search the interior. After Office Lanier obtained the consent, the canine officer told him that the dog had not detected any drugs by sniffing the outside of the vehicle. During his search of the vehicle, Officer Lanier found a black canvas bowling bag on the passenger side floorboard. Inside the bag was a folded towel, which he unwrapped to find 364 grams of marijuana. Officer Lanier then placed Brown and defendant under arrest for possession of marijuana.
Prior to trial, defendant filed a motion to suppress the evidence found in the search of Brown's vehicle. A suppression hearing was held, at which Officer Lanier was the only witness to testify. The trial judge denied defendant's motion to suppress and defendant pled guilty to felony possession of marijuana and felony possession with intent to sell and distribute marijuana. Defendant was sentenced to a minimum term of six months to a maximum term of eight months in the North Carolina Department of Correction. That sentence was suspended and defendant was placed on supervised probation for eighteen months. Defendant appeals.

I.Standard of Review
Defendant has properly preserved the evidentiary record by submitting a motion to suppress and objecting to the evidence seized during the search of Brown's car. When this Court reviews a motion to suppress,
[t]he trial court's findings of fact . . . are conclusive and binding on appeal if supported by competent evidence. This Court determines if the trial court's findings of fact support its conclusions of law. Our review of a trial court's conclusions of law on a motion to suppress is de novo.
State v. Edwards, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648 (2007)(internal citations and quotations omitted), disc. rev. denied, 362 N.C. 89, 656 S.E.2d 281 (2007). If the trial court has not made findings of fact, "the necessary findings are implied from the admission of the challenged evidence." State v. Phillips, 300 N.C. 678, 685, 268 S.E.2d 452, 457 (1980)(citing State v. Whitley, 288 N.C. 106, 215 S.E.2d 568 (1975)).

II.Analysis

A. Trial court's failure to make findings of fact and conclusions of law
Defendant argues that the trial court erred in failing to make findings of fact and conclusions of law in the order denying the motion to suppress. N.C. Gen. Stat. § 15A-977(f) requires a judge in ruling on a motion to suppress to "set forth in the record his findings of facts and conclusions of law." N.C. Gen. Stat. § 15A-977(f) (2007). Findings of fact are not necessary, however, when there is no material conflict in the evidence presented at the suppression hearing. State v. Parks, 77 N.C. App. 778, 781, 336 S.E.2d 424, 426 (1985). While findings of fact are not required when there is no material conflict in the evidence, it is always a better practice to make findings of fact and conclusions of law. Phillips at 685, 268 S.E.2d at 457.
Defendant concedes that there was no material conflict in the evidence presented at the suppression hearing. However, defendant argues that because the issues involved are so complex, the absence of findings of fact and conclusions of law impedes defendant's ability to make assignments of error on appeal. Defendant cites no authority for this proposition.
Specifically, defendant argues that the issues of reasonable suspicion to search, the voluntariness of Brown's consent, the scope of Brown's consent, and standing under the Fourth Amendment require complex legal analysis, and thus necessitate findings of fact by the trial court. This Court has previously refused to require findings of fact where there was a conflict involving a legal issue, but no conflict in the evidence. State v. Baldwin, 161 N.C. App. 382, 386-87, 588 S.E.2d 497, 502 (2003)(conflict in the interpretation of the scope of a search warrant). Since there was no material conflict in the evidence, there is no need to require findings of fact in this case. This assignment of error is overruled.

B. Denial of defendant's motion to suppress
Defendant argues that the trial court erred in denying his motion to suppress for the following reasons: (1) The officer lacked reasonable suspicion to detain defendant and Brown beyond the scope of the initial traffic stop; (2) Brown's consent to search the vehicle was obtained under duress or coercion; (3) the scope of Brown's consent did not extend to defendant's bag; and (4) the search of defendant's bag violated his rights under the Fourth Amendment to the U.S. Constitution.

1. Length of detention
Defendant argues the traffic stop ended when Officer Lanier returned Brown's and defendant's personal documents, and that once the stop was terminated, any further detention was unlawful.
In general, a traffic stop must last no longer than necessary to effectuate the purpose of the stop. Florida v. Royer, 460 U.S. 491, 501, 103 S. Ct. 1319, 1326, 75 L. Ed. 2d 229, 239 (1983). "Once the original purpose of the stop has been addressed, there must be grounds which provide a reasonable and articulable suspicion in order to justify further delay." State v. Falana, 129 N.C. App. 813, 816, 501 S.E.2d 358, 360 (1998)(citing Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). "[A] passenger subject to detention beyond the scope of the initial seizure is still seized under the Fourth Amendment and, therefore, has standing to challenge the constitutionality of the extended detention." State v. Jackson, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (2009)(citing Brendlin v. California, 551 U.S. 249, 251, 168 L. Ed. 2d 132, 136 (2007)).
Defendant argues that the facts of this case require us to apply this Court's holding in State v. Falana, 129 N.C. App. 813, 501 S.E.2d 358 (1998). In Falana, this Court reversed the denial of a motion to suppress evidence found during the search of defendant's vehicle where the officer conducted the search after issuing defendant a warning ticket. Id. The instant case is distinguishable from Falana. The search in Falana was conducted without the consent of the defendant. Id. at 815, 501 S.E.2d at 359. In Falana, after the officer issued the defendant a warning ticket and returned his identification, the officer asked the defendant to consent to a search of his car. Id. Unlike the instant case, the officer did not ask the defendant for permission to ask him additional questions after the purpose of the stop was completed. The defendant expressly denied consent for the officer to search his car. Id.
In the instant case, the purpose of the initial stop was to find out whether Brown, the driver, had a valid driver's license. That purpose was effectuated when Officer Lanier returned Brown's and defendant's driver's licenses and issued the citation to Brown. Although the detention continued beyond this point, the detention was only extended because Brown consented to the additional questioning and search of his vehicle. Because consent was given, reasonable suspicion to extend the detention was not required. See State v. Myles, 188 N.C. App. 42, 45, 654 S.E.2d 752, 755 (2008), aff'd per curiam, 362 N.C. 344, 661 S.E.2d 732 (2008).
Defendant argues that he and Brown were still seized even after Officer Lanier returned their documents and that Brown's consent to the additional questioning and search of the vehicle was procured through duress or coercion. Whether the events which followed Officer Lanier's return of the personal documents were part of a consensual encounter depends on whether the traffic stop had ended at that point. In State v. Kincaid, this Court held that a traffic stop is terminated when the detaining officer returns the individual's personal documentation, subject to a totality of the circumstances test. 147 N.C. App. 94, 99-100, 555 S.E.2d 294, 298-99 (2001). After the officer has returned the individual's documentation, subsequent questioning and even requests for consent to search will not rise to the level of a constitutional seizure, so long as a reasonable person would feel free to refuse to cooperate. Id. at 100, 555 S.E.2d at 299 (quoting State v. Brooks, 337 N.C. 132, 142, 446 S.E.2d 579, 586 (1994)). If the totality of the circumstances reflects a consensual encounter, rather than a seizure, there is no violation of the Fourth Amendment. Id.
Therefore, we must consider the totality of the circumstances in determining whether the extension of the traffic stop beyond its original purpose was a consensual encounter or a seizure. In making this determination, this Court has considered the following factors: "the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled." State v. Kincaid, 147 N.C. App. 94, 99, 555 S.E.2d 294, 298 (2001)(quoting U.S. v. Elliott, 107 F.3d 810, 814 (10th Cir. 1997)).
In the instant case, there is no evidence to suggest that there was a "coercive show of authority" other than the presence of three police officers. Id. at 99, 555 S.E.2d at 298. Only Officer Lanier was interacting directly with Brown and defendant. There is no evidence to suggest that Officer Lanier or any of the other officers acted in a threatening or coercive manner by brandishing a weapon, physically touching Brown and defendant, or using a commanding tone of voice.
The presence of the other officers, as well as Officer Lanier's request that Brown and defendant get out of the car, were safety precautions necessitated by the canine search of the car.
Officer Lanier testified that during a canine sniff search, the officer who conducts the search focuses all of his or her attention on the dog. Thus, the officer would face a threat from the occupants if they were allowed to remain inside the vehicle because he or she would be unable to monitor them. Officer Lanier also testified that occupants are removed for their own safety, as the dog may bite them if they remain in the vehicle during the search.
During the entire exchange, Brown and defendant were polite and cooperative. There is no evidence suggesting that Brown or defendant seemed nervous or threatened during their interaction with the officers. The traffic stop concluded when Officer Lanier returned Brown's documents and issued the citation. At that time, the police officers were not behaving in a threatening or coercive manner and Brown and defendant exhibited no signs of nervousness or stress due to the police presence. We conclude that under the totality of the circumstances a reasonable person would have understood that he was free to refuse to cooperate. Therefore, the events following the conclusion of the traffic stop were part of a consensual encounter and reasonable suspicion was not required to justify the prolonged detention. See Kincaid at 99-100, 555 S.E.2d at 298-99(holding that after a traffic stop has concluded, so long as a reasonable person would feel free to refuse to cooperate, any requests for consent to search are not a constitutional seizure and thus do not require reasonable suspicion).
We hold that the extension of the detention was permissible under the Fourth Amendment to the U.S. Constitution and that the subsequent consent to search given by Brown was valid. This assignment of error is overruled.

2. Scope of consent
Finally, defendant argues that the scope of Brown's consent did not extend to defendant's bag on the passenger floorboard. A suspect may limit the scope of his consent, allowing the officer to search some areas and not others. Florida v. Jimeno, 500 U.S. 248, 252, 111 S. Ct. 1801, 1804, 114 L. Ed. 2d 297, 303 (1991). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of `objective' reasonableness  what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Id. at 251, 111 S. Ct. at 1803-04, 114 L. Ed. 2d at 302 (internal citations omitted).
Officer Lanier knew that Brown had authority to give consent to search the vehicle, as he had received information through his computer search that Brown was the registered owner. See N.C. Gen. Stat. § 15A-222 (2007)(registered owner of a vehicle may give effective consent to search an entire vehicle). Brown did not limit his consent to search the vehicle in any way, nor did defendant attempt to limit the search by asserting his ownership of the bag. Thus, Officer Lanier reasonably believed that he had consent to search the entire vehicle, as well as any containers found inside. See State v. Foster, 33 N.C. App. 145, 148, 234 S.E.2d 443, 446 (1977)(consent by person in apparent control of car permits court to infer consent by another person who remains silent); State v. McDaniels, 103 N.C. App. 175, 186, 405 S.E.2d 358, 365 (1991)(consent to search presumed voluntary "where the [passenger] who remains silent knows that the driver has given his verbal consent to a search").
Since neither Brown nor defendant limited Brown's consent to search the vehicle, we find that the search of defendant's bag was within the scope of Brown's consent and, therefore, permissible under the Fourth Amendment to the U.S. Constitution. This assignment of error is overruled.

III. Conclusion
We hold that the events following the completion of the traffic stop were entirely consensual and Brown's consent to search the vehicle extended to defendant's bag. Thus, we affirm the trial court's order denying defendant's motion to suppress.
The record on appeal includes additional assignments of error not addressed by defendant in his brief to this Court. Pursuant to N.C.R. App. P. 28(b)(6) (2007), we deem them abandoned and need not address them.
Affirmed.
Judges HUNTER, Robert C. and HUNTER, Jr., Robert N. concur.
Report per Rule 30(e).